Bowlby *v.* Bowlby.

BOWLBY *vs.* BOWLBY.

1. A separation from her husband by the wife for more than three years, though begun by her without such reasons as would have sufficed on her part to procure a divorce from him, *held* not to entitle him to a divorce, because of his neglect to do anything to induce her to return.

2. The desertion, though willfully begun, *held* not to have been obstinately continued, but to have been in fact made compulsory against her by the conduct of her husband.

*Mr. Leonard* and *Mr. McCarter*, for complainant.

*Mr. Taylor*, for defendant.

THE VICE-CHANCELLOR.

I must advise in this case, that the complainant's bill be dismissed, with costs. He sues for a divorce from his wife on the ground of desertion. A separation has existed between

them since the month of March, 1867. She left in that month the house of his parents, where he lived, but it is clear from the evidence, that the continuance of the separation then begun is chargeable to him more than to her. Whether the beginning of the separation was not by his consent and by his aid, is a question in respect to which the evidence is conflicting. She swears that it was, and he swears that it was not. They were both examined as witnesses before me, and, after hearing and considering their testimony in connection with the other evidence, I am quite unable to say that his testimony is entitled to more weight than hers. But the relative weight or credibility of their testimony on this point may be allowed to go undeclared, because I cannot doubt that, assuming the separation to have been begun without his express consent, and without such legal reasons for it as would have enabled her to obtain a decree of divorce against him, yet his subsequent conduct shows that he concurred in the separation, and did, in fact, make it compulsory against her. His omission to do anything whatever to invite or encourage or permit her to return, was manifestly due to his purpose to have her absence become a cause for divorce. All the circumstances point to this conclusion ; not the least of which is the fact that a few weeks after she left him she went back, under the pressure of poverty and the wants of her child, as well as her own, to the complainant's home at his father's, and sought admittance in vain. He was not there, but his mother met her at the door, and his mother's conduct and words were, in effect, a refusal to give her admission, and the fact that this attempt of his wife to return to him became known to him that evening, or shortly after, and his practical approval and adoption of his mother's refusal, by acquiescing in it, must prevent him, aside from other features of the case, from successfully maintaining that her absence has been on her part a desertion. Whether it has been a desertion on his part need not now be considered. This view of the case is the most favorable to the complainant that the evidence ad-

mits of, and I adopt it in advising the decree mentioned above.

The parties were married in New York, in February, 1861. He was attending lectures as a student of medicine, and boarding in the family of a widow, who had adopted the defendant when an orphan of five or six years. The defendant was a member of the family at her marriage, and about sixteen years old. The complainant's age does not appear from the testimony, but is manifestly much greater than his wife's. The marriage was private and not disclosed to their friends till weeks afterwards, when he took her to his father's, in Newark, in whose house she remained, with the exception of a few months, till the time of the separation in 1867. Her situation of dependence was not agreeable to her feelings, and, while no contentions or differences of importance appear to have arisen between her mother-in-law and herself, it is plain that their association did not conduce to the happiness of either. The mother testifies to the defendant's temper that it was variable and capricious, but no serious misconduct is alleged, nor does the defendant allege any against the mother. There was a lack of sympathy between them, and a lack of complacency in the mother with her son's marriage. The suggestion occurs in the case that the defendant was a servant at the time of her marriage, but if true it could hardly add anything to the merits of his case, and it does not appear to be true. So far as inferences can be drawn from the defendant's testimony and demeanor as a witness, there is no disparity between the parties unfavorable to her, in respect to either intelligence or culture, nor anything to indicate an inequality of social positions. In 1862, the complainant joined the army as an assistant surgeon, and was in it at the close of the war. After his return he was infected with the venereal disorder, which he communicated to his wife and child, and which she testifies was one of the reasons of the separation. Much of the testimony on his side relates to this disorder, and is to prove that the existence of it in himself was not due to his criminal conduct. The presumptions and proofs are adverse

to him on this point, but he swears to his innocence in positive terms, and I accept his testimony in regard to it as true. But accepting it as true, and admitting the allegations of the answer against him not to be established by the proofs, the case is yet clearly against him. The sickening calamity thus brought on his wife entitled her to consideration from the complainant, widely different from that which he seems to have conceived to be her due. She was not cured, she says, till several months after she had left him. He says she was cured when she left. But whatever her true state then was, it is certain that her nerves were unsettled and her constitution affected by a loathsome disease, communicated by him. It need not be said that he was bound to exercise corresponding forbearance, not to say kindness, in his care and protection of her. He was bound, under all the circumstances of her leaving, to look after her, and not abandon her to the consequences of her mistake, if mistake she committed. The evidence, showing these circumstances in detail, need not be presented in this opinion. My judgment is that there is an entire failure to make out what the statute describes as a willful, continued and obstinate desertion. Willful in the first instance, it may be conceded to have been, under the favorable view I assume for the complainant. Obstinate it was not, because not persisted in against effort or influence on his part to bring it to an end. On the contrary, he repelled her advances. His excuse is that she had complained to her friends after leaving him of the disease she had taken from him, and had charged him with cruelty and the offences alleged in her answer. But he did nothing, when he found her gone, to bring her back before these complaints could be made, and he had given too much occasion for them to justify this excuse, or make it available in his defence.

The charges of cruelty and adultery, contained in the answer, may, as before stated, be admitted not to be established by the proofs. Desertion or separation by the wife may be excused on grounds short of those which would be sufficient, on her side, to obtain a divorce. In *Cornish* v. *Cornish*, 8

*C. E. Green* 208, it was held that where the husband has not made the advances or concessions which a just man ought to make to put an end to his wife's desertion, induced, though not justified, by his conduct to her, the desertion, though willful and continued, is not obstinate. This rule is in accordance with previous decisions in this court, by the late Chancellor and his predecessors, and, applied to this case, disposes of it against the complainant, and makes it unnecessary to discuss or decide other controverted points presented by the pleadings and proofs.