Newing *v*. Newing.

---

ARCHER C. NEWING

*v.*

ALIDA NEWING.

1. To make out a case of desertion against a wife, it must be shown that she has absented herself from her husband for three years, of her own accord, without his consent and against his will.

2. The essence of the wrong of desertion by a wife consists in her refusing to live with her husband when he wants her to live with him.

3. Desertion, to be ground of divorce, must be for the full period fixed by the statute, for desertion, of itself, is not cause of divorce, but only its continuance for the period fixed by law.

4. If a wife leaves her husband without cause, and with intent to throw off her marital duty, and afterwards realizes that she has done wrong and would return if the way were opened for her, but her husband refrains from doing anything to induce her to return, for the purpose of making her absence the ground of a suit for divorce, her desertion, in such a case, is neither obstinate nor against her husband's will, and cannot, therefore, be made the basis of a decree of divorce.

On final hearing on petition and answer and proofs taken before a master.

*Mr. John E. Lanning* and *Mr. Theodore Runyon*, for the petitioner.

*Mr. William I. Chamberlain*, for the defendant.

VAN FLEET, V. C.

This is a suit by a husband against his wife for divorce. The petitioner alleges that his wife deserted him in June, 1885. He commenced his suit on the 6th day of July, 1888, and he charges, in his petition, that the defendant had, for three years prior to the commencement of his suit, willfully, continuously and obstinately deserted him. The case may be disposed of by the decision of a single question, and that is, has the petitioner shown that the defendant willfully, continuously and obstinately deserted him for the full period of three years prior to the commencement of his suit?

The law as to what constitutes desertion is well settled. Chancellor Green, in *Moores v. Moores, 1 C. E. Gr. 275–280,* said: "To constitute desertion, the wife must absent herself from her husband of her own accord, without his consent, and against his will. * * * The simple inquiry [in such a case] is, has the wife, for the space of three years, absented herself from her husband without his consent and against his will? If she has not, her desertion is not, within the contemplation of the law, willful and obstinate." And desertion, to be ground for divorce,

must be continued for the full period of three years, for desertion,. of itself, is no cause of divorce, but only its continuance for the period fixed by the statute. *Coddington* v. *Coddington, 5 C. E. Gr. 263; Meldowney* v. *Meldowney, 12 C. E. Gr. 328.* And the principle is also firmly established, that if a wife leaves her husband without cause, and with intent to throw off her marital duty, and afterwards realizes that she has acted hastily or foolishly, and would return if the way were opened for her, but her husband refrains from doing anything to induce her to return, for the purpose of making her absence a ground of divorce, her desertion, in such a case, is neither obstinate nor against his will, and is not, therefore, a ground of divorce. *Cornish* v. *Cornish, 8 C. E. Gr. 208; Bowlby* v. *Bowlby, 10 C. E. Gr. 406; S. C. on appeal, 10 C. E. Gr. 570; Trall* v. *Trall, 5 Stew. Eq. 231.* The essence of the wrong of desertion by a wife consists in a refusal by her, against the will and contrary to the wishes of her husband, to perform her marital duties and obligations—in refusing to do what he wants her to do and what he has a legal right to require her to do—but it is obvious, that where her refusal is not against his will, but is really in accordance with his wishes, because he intends to make her refusal, after the lapse of sufficient time, a ground for divorce, he suffers no real wrong, on the contrary, his wife's course of conduct is just that which he wants her to pursue in order that he may get rid of her.

For present purposes I shall assume that, at the time the parties separated, in June, 1885, the defendant left the petitioner fully resolved never to live with him again, and that her purpose then was to throw off all marital duty and allegiance to him, and to destroy the marriage relation which existed between them, and that this continued to be her purpose until some time in the Spring of 1888. The parties have four children, three daughters and one son. On the 30th day of June, 1885, an order was made by one of the justices of the supreme court, under proceedings on *habeas corpus*, giving the custody of the two eldest children to the father and the two youngest to the mother, and making provision that each parent should have access to the children in the custody of the other. From the time of their

Newing v. Newing.

marriage, in September, 1874, up to the time of their separation, in June, 1885, the parties resided at Long Branch, in this State. After the separation the defendant continued to reside there with her two children, in her own house, near the hotel of the petitioner, until October, 1885, when she removed to the city of Newark, where she still continues to live. The petitioner, after the defendant took up her residence in Newark, went to her residence there several times to see the two children in her custody. He says his visits there were made to the children and not to his wife, and the defendant says, that, when the petitioner came to her house to see the children, he never spoke to her except she made inquiry about the children in his custody, and then he simply answered her inquiries. The petitioner says himself, that he never asked his wife to return to him after the order dividing the custody of the children was made. On the 17th day of April, 1888, the defendant sent a letter to the petitioner, of which the following is a copy, except the spelling and punctuation :

"APRIL 17TH, 1888.

"ARCHIE—I have been a long time making up my mind to write to you, for I don't suppose you will take any notice of this, according to what you have said to Ettie and DeWitt, but I just made up my mind I would write and let you know how I felt. You can't do any less than not make any reply, but then I will feel that I have done my part. I do know and feel that I said a good deal that has hurt your feelings, and I ask you, from the bottom of my heart, to forgive me. You must remember you have not done right in a good many things, and you told me, even three years ago, that you was sorry. And I will say I am sorry for everything I have done, although I don't think you would think so hard of me if you had not listened to others so much. There is a woman that lives close to you; I think if it had not been for her things would have been different to-day. You may find that out some day. You have said some pretty cutting things to me, when you say I put the devil in the children. God knows I love the girls as I love my life. I am willing to do anything for them, and I have never set Ettie or DeWitt up against you. I think they think as much of you to-day as they did when we was living together. They talk of you all the time. It seems to me the longer I am away from Mamie and Maggie the more I miss them. They seem so sweet to me now and I feel so proud of them when I see them; they are not out of my mind much of the time. Now, Archie, I am in no tight place, everything seems to go along all right, and I feel very much attached to the place, but I would sacrifice anything most to live with you and have the children all together again. Now, I will make you a better wife than I have ever been,

if you have any love left for me.  We will both forget the past and live
happy.  If you will treat me nice I will promise to do the same to you.  Now,
will you please keep this letter and not show it to any one.  If you have learnt
to like any one else don't let me step between you and that one, but God knows
I would like to have the girls.  Now, will you answer this by letter or come
up.  I will close by saying good night.          " YOUR WIFE."

The petitioner received this letter very soon after its date.
He made no reply to it.  He says, in his testimony, that he does
not know why he did not reply to it.  After receiving the letter,
he did not again visit the children in his wife's custody until
some three or four months after he had instituted this suit.  He
does not pretend that he did not regard the letter as an honest
and sincere expression of his wife's mind and heart.  If he had
had the slightest doubt about her sincerity, and had not wanted
her to remain away in order that he might make her absence the
basis of a suit for divorce, there can be little doubt that it would
have occurred to him that there was a very easy way for him to
put her sincerity to a decisive test, and that was for him to meet
her offer to return in the same frank and forgiving spirit in
which it was made.  I have no doubt as to the sincerity of the
defendant's offer.  I believe that she wanted to return to her hus-
band, and that she most earnestly desired that their broken home
should be restored.  Her controlling motive in asking to be taken
back may have been a wish to do that which she believed would
best promote the happiness and welfare of her children ; she tes-
tifies, however, that, between the date of the separation and the
time when she wrote the letter, her feelings towards her husband
had undergone a change, and that she felt all she wrote.  There
is, in her letter, the very highest evidence, in my judgment, of
both that contrition and affection that the petitioner had a right,
under the circumstances, to either expect or demand.  A hus-
band has no right to require his wife, even when she is in the
wrong, to crawl back to him.  It is his duty to take her back
upon such terms as will permit her to preserve her self-respect.
He must act the part of a just man, and if he refuses to make
the advances to her which a just man ought to make in order to
put an end to his wife's desertion and allow her to return to his

home, he, from that time forth, becomes the party in fault, and relieves his wife from the charge of being an obstinate deserter. The receipt of this letter by the petitioner changed entirely the position of the parties towards each other. Up to that time I have assumed that the defendant was in fault. She now asks to be taken back; she makes her wishes known by letter; that was the best means she could use under the circumstances; it enabled her to say all she wanted to say, freely and without interruption, and it gave him the amplest opportunity for deliberate consideration, and it avoided all danger of loss of temper on either side, and all opportunity for either to indulge in irritating allusions to the past. The reception of this letter made it the duty of the petitioner to speak, if he was willing to allow his wife to return. Silence meant repulsion. If he had said with his tongue or pen what he did by his conduct, I cannot suppose it would have been possible to contend that he was not, from that time forth, responsible for his wife's absence from his home. This court, in *Hankinson* v. *Hankinson, 6 Stew. Eq. 66, 70,* held that, where husband and wife voluntarily separate, either party may make the other a deserter by sincerely asking for a restoration of their conjugal relations. In that case a wife asked to be divorced from her husband on the ground that he had deserted her. The proofs showed, however, that the parties had separated under circumstances which indicated consent. But the court said: "Had the petitioner, at any time during the separation, communicated to her husband her wish that he would, or willingness that he should, live with her as her husband, and he had refused, from that time he would have been chargeable with desertion." And so here; the defendant's desertion ceased when she asked her husband to take her back, and he repulsed her by remaining silent.

A divorce must be refused, and the petition dismissed, with costs.