KALMAN TABATSKO, petitioner-respondent,

*v.*

ANNA TABATSKO, defendant-appellant.

[Decided October 20th, 1924.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Fielder, who delivered the following opinion orally:

"I think there should be a decree in favor of the petitioner, and that defendant's cross-petition should be dismissed. It appears from the evidence that prior to October 26th, 1920, there had been no serious differences between the parties, at least their troubles had not been such that the wife would have been justified, at that time, in leaving her husband's home. On the 26th or 27th of October, 1920, she took her child and some wearing apparel and told her husband she was going to visit her parents. She says that on other occasions when she visited her parents just prior to that time he had not objected to her going, but had complained when she returned that she stayed too long, and that on this occasion he did not object to her going, and she went with the intention of making a longer stay than usual because her parents were moving from Astoria to New York, and she desired to assist them in moving. She says she knew she was going to stay a couple of days, and the fact is she remained a week, or nearly a week, and she had not informed her husband that she was going to be gone for that length of time. When she returned after this absence, the length of which was unexpected on his part, he was annoyed, and he had some justification in being annoyed at her prolonged absence and a quarrel, or argument, may have arisen. She says he called her vile names on Monday night after her

return; this he denies. She says they did speak for three days. During that three-day period nothing· could have happened to add to what had occurred between them before that time which would justify her in separating from her husband, and yet she says on the day she left, which must have been some time early in November, 1920, she left with the intention of not coming back, although she says she was willing to return. Very shortly after she left she consulted a lawyer. Now, if it had been her intention merely to scare her husband into believing that she was going to leave him, if he had done things wrong and did not show contrition for what he had done, she would not have immediately consulted a lawyer about legal proceedings. On the lawyer's advice, a week later she returned with an expressman, her intention being to take her belongings and make her separation complete. She said her husband opened the door, did not object to her taking her things, accompanied her to the door when she left and told her to get the hell out of here. The petitioner denies that he used any such expression to her. On the contrary, he says he urged her to stay; that he told her she should stay, and that she better think well over what she was doing. In this he is corroborated by the testimony of Mr. Goerlich, who was present at the time. Mr. Goerlich says that he spoke to the defendant something to the same effect, and she told him she did not want to hear anything about it—that she was going. On this occasion she tore a photograph of herself from a picture frame, taking the photograph out of the frame for the purpose of destroying her picture. That act was indicative of her frame of mind, of her temper and of her intention, and shows that she was through with her husband, and was going to have nothing more to do with him. A week or so afterward he went to see her father at his place of business. He certainly went there for some purpose that had to do with his wife's separation from him. He did not go there to say nothing to his wife's father. He certainly did not go there to have the father complain to him, as the father says he did, about his treatment of his wife. The fair inference from the fact that he went there at all is

that he went to say something about his wife and her return. I think his statement that he asked his father-in-law where his wife was, and said he wanted her back, and that the father-in-law would not speak to him is true, and is corroborated by the fact that the father-in-law says that when he came out after his mid-day meal from his work he found the petitioner waiting for him. The father-in-law says, towards the close of his testimony, that he stood and talked to the petitioner a few minutes, and having to go back to work he turned around and went in. If the father-in-law wanted to discuss with the petitioner the welfare of the petitioner's wife, it seems to me that the father-in-law would have stopped more than a few minutes when he found the petitioner wait- ing to talk with him. I think that the testimony of the petitioner as to what occurred on that occasion is true, and demonstrates his desire to have his wife return to live with him.

"The subsequent acts of the wife show that it was not her intention to become reconciled with her husband, and that she was not willing to return to him, but that she purposed to rely upon what she conceived to be, or what was advised were, her legal rights, because she commenced two or three different proceedings against her husband. Her desire was to compel her husband, by law, to support her while she remained sepa- rated from him, when she now says it was then her wish to return to her husband. She has not shown that she made such wish known to her husband, and her suits for support indicate a contrary frame of mind, and were likely to bring about further estrangement rather than a reconciliation. I think the attitude of the defendant towards the petitioner, subsequent to her leaving the home in which she and the petitioner resided, corroborates the petitioner's testimony. I will advise a decree in favor of the petitioner and dismissing the cross-petition."

*Mr. Thomas R. Armstrong,* for the appellant.

*Mr. Edward A. Kenney,* for the respondent.

PER CURIAM.

The decree will be affirmed, for the reasons stated in the opinion delivered by Vice-Chancellor Fielder in the court of chancery.

*For affirmance* — THE CHIEF-JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, GARDNER, VAN BUSKIRK, CLARK, McGLENNON, KAYS—15.

*For reversal*—None.