This is an appeal from a decree of the Court of Chancery awarding a divorce to the petitioner husband based on the desertion of the wife and dismissing the wife's counter-claim which alleged desertion on the part of the husband, the period of desertion alleged being the same in each case.
The husband, a farmer in Sussex County, married the appellant in August, 1934. Early in 1936 various differences arose between them, concerning, among other things, a deposit of money at the bank. The husband says that to compose this difference he withdrew the sum of $1,100, approximately one-half of the bank account, and gave the money to the wife, saying, "you said I stole the money and I never did steal nothing from nobody;" that he wanted her to behave herself and "make a woman of herself." He testified also that during his illness, which occurred about this time, "She was mean to me and didn't care, if I wanted anything I could get it myself * * *" and that she frequently called him vile names. This payment to the wife seemed not to improve conditions, "matters didn't go any better after I done that. She kept right on * * * being mean to me and calling me names and I didn't know what all she didn't do." He further testified that his wife wanted a new stove and on March 31st, 1936, thinking to surprise her, he purchased a new stove and a linoleum rug and, assisted by several other men, was installing the stove and laying the rug when the wife came into the house. The wife was not pleased with the "surprise" and proceeded at once to destroy the rug and throw it out of doors and was about to damage the stove when the representative of the store from which the stove was purchased remonstrated that the article had not yet been paid for, whereupon the wife desisted from further damage to the article. Later that day one Mary Kimble came to the farm to purchase milk and gave the husband a $5 bill, whereupon the wife grabbed the husband's wrist, saying "Let me see what you got there." *Page 365 
A scuffle resulted and the wife fell to the ground, when, according to the husband, she said, "There, that is what I wanted you to do." * * * "She came home that night and stayed all night, and the next morning she left."
Mrs. Henderson made complaint against her husband before a justice of the peace, charging assault and battery, but this matter seems not to have been prosecuted.
Mrs. Henderson, with two children of a former marriage, went to live at Franklin, Sussex County, about two and one-half miles from the farm. Her husband did not go to Franklin to visit her or request that she return to his home. About June 15th, 1936, however, the wife returned to the farm ostensibly to obtain some chickens. The husband said that he had a conversation with her at that time and he "asked her back and told her to behave herself and come back and settle down and live with me, that I didn't get married for that kind of trouble." She replied, "she wouldn't come back before September, if she did then." Mr. Henderson made no other effort to induce his wife to return to his home and to resume marital relations. He was aware that his wife was living in Franklin. He had seen her and her children there. He understood that his wife "had not positively refused ever to come back" but he did not again seek her return. He expressed his attitude in these words: "I asked her back in June and I thought she went away herself and if she wanted to she could come back herself."
The wife gave a different version of the June meeting. She testified:
"A. I said, `Elifes, I am awfully sorry to hear your father died — to hear the bad news you had. I want to come back and live with you and straighten things out. I have had just about enough of this. We are growing older and I think we should try to compromise with each other more than we had and I don't see why you should take the attitude towards me that you do. You have everything that I had and I am growing older all the time the same as you are.' I said, `I would like to come back and live with you.' He said, `No you don't. You don't come back to live with me. I have a woman in the tenant house ____' *Page 366 
"Q. In the where? A. In the big house. And he said, `She is going to take care of me.' He said, `If you want to live in the old tenant house you can.'
"Q. Was the big house where you had lived? A. Yes."
Mrs. Henderson further stated that on this occasion she proposed that she would come back when the tenant moved out of the farm house and "when you want me to come back to live with you, let me know."
We are not unmindful that the findings of the learned advisory master, who had the benefit of observing the witnesses and was in a better position than a reviewing court to determine where the truth lay are entitled to much weight, but nevertheless, here the wife's version of the visit and what transpired seems more reasonable and entitled to credence. The tenants, a married couple, testified that prior to April 1st, 1936, they had been employed on the farm by the husband and had lived in the tenant house but that after the wife had left the premises and before the meeting of June 15th, 1936, they had moved into the farm house and were in occupancy during June, 1936, and thereafter until some time in July, when they left the farm. It is also to be noted that the husband did not seek out his wife. Rather it was she who came to the farm and was thereupon directed by the wife of the tenant to the field where Mr. Henderson was working. Nor did he seek her out in July when the tenants left the premises, nor at any time thereafter. These facts are more trustworthy than the recollection of the interested parties and they support the version of the meeting as related by the wife. The husband did not testify that he desired that his wife return and that he would arrange to have the tenants move from the farm house to the "tenant house" and that the wife might occupy his home as it was her right to do. She was entitled to be taken back to his home upon such terms as were consistent with her self-respect, Newing v. Newing, 45 N.J. Eq. 498, 502, and was not required to live in the tenant house apart from her husband nor to live in the farm house with the hired hands.
On cross-examination the husband testified that the June, 1936, conversation was "the only conversation we ever had *Page 367 
from the time she left." Also, that he never thereafter wrote to his wife, or made any effort to have her return to his home.
Mrs. Henderson testified that when she left her husband's residence on April 1st, 1936, she "moved two bedroom suites and a dining room suite and a living room suite and kitchen equipment, and I also took two loads to my father's place and stored it;" that she went to the farm in June, 1936, her real purpose being to effect a reconciliation; that she had seen her husband several times in Franklin and Hamburg; that he saw her on these occasions but made no effort to talk with her, and that notwithstanding the pendency of certain litigation hereafter referred to, she sought her husband out on other occasions in 1936, 1937, 1938 and 1939, sometimes accompanied by a third party, but that in no instance when she broached the subject to her husband would he agree to take her back.
On October 5th, 1936, the wife instituted a suit for divorce against the husband on the ground of extreme cruelty, alleging certain acts of cruelty, included in which were several charges involving sexual perversion. This petition was dismissed on September 2d 1938. On October 27th, 1936, she instituted another action in Chancery against her husband, praying an accounting on the theory, it is indicated, of contributions by her to the purchase of farm stock and it is suggested that in this suit she repeated the charges of cruelty, c. This action was also dismissed by the Court of Chancery on March 1st, 1940. On October 16th, 1939, the wife instituted a proceeding against the husband in the Juvenile and Domestic Relations Court of Sussex County, wherein she sought to obtain a support order. Upon jury trial and verdict a judgment was entered against the wife.
About June 8th, 1939, the wife testified, Mr. Henderson took the position that he did not have to take her back because two years had elapsed from the time she had left him. On this occasion Mrs. Henderson went to the farm in an automobile driven by a Mr. Courtright and had this conversation with her husband: "I said, `Elifes, I want to talk to you.' He said, `What are you here for?' and I said, `I have come back and I want to live with you. I want to talk to *Page 368 
you private.' He said, `No you don't. You can't come back here. You have been away from here two years. I don't have to take you back.'"
It is interesting to note that prior to the decree dismissing the wife's action for extreme cruelty the advisory master wrote to respective counsel in the matter: "I am quite satisfied that many of the differences and considerable of the disagreements between these parties was their mutual fault." He repeated this in another and later letter stating: "My reaction in this matter is that the marital difficulties of these parties was quite the result of their mutual errors."
The principal argument made on the wife's appeal to this court is that the decree in favor of the husband is erroneous in that the husband had not established the appellant's willful, continued and obstinate desertion as required by the statute,R.S. 2:50-2. That this point is well made seems obvious.
It was the burden of the husband to prove his case and all uncertainties of fact should be resolved against him. Gordon v.Gordon, 89 N.J. Eq. 535, 537. We may assume that willfulness has been shown and that the alleged desertion continued for a period of two years, as required by the statute. However, there is no satisfactory proof of obstinacy and this is fatal in an action based on desertion. To prove obstinacy it must be shown to the satisfaction of the court that the wife deliberately and persistently refused to return to her husband's home upon his sincere solicitation as under the circumstances of the case he ought to make. Hooper v. Hooper, 34 N.J. Eq. 93; Tabatsko v.Tabatsko, 96 N.J. Eq. 674; Baxter v. Baxter, 101 N.J. Eq. 236;O'Brien v. O'Brien, 103 N.J. Eq. 214; affirmed, 105 N.J. Eq. 250; Mayerson v. Mayerson, 107 N.J. Eq. 63; Munger v. Munger,130 N.J. Eq. 279.
We are satisfied that the departure of the wife on April 1st, 1936, from his residence was not against the will of the husband and that he never thereafter evidenced any desire for her return. The single instance offered by the husband is the meeting of June 15th, 1936, treated above, and, here, an excerpt from Bowlby v.Bowlby, 25 N.J. Eq. 406; affirmed, 25 N.J. Eq. 570, is quite pertinent: *Page 369 
"But the relative weight or credibility of their testimony on this point may be allowed to go undeclared, because I cannot doubt that, assuming the separation to have been begun without his express consent, and without such legal reasons for it as would have enabled her to obtain a decree of divorce against him, yet his subsequent conduct shows that he concurred in the separation, and did, in fact, make it compulsory against her. His omission to do anything whatever to invite or encourage or permit her to return, was manifestly due to his purpose to have her absence become a cause for divorce."
No testimony in behalf of the husband suggests that it would be futile to attempt reconciliation, or that if reconciliation were effected it would be merely temporary. The burden in this respect rested upon the husband. Lammertz v. Lammertz, 59 N.J. Eq. 649; Hall v. Hall, 60 N.J. Eq. 469, 470.
Nor, in the circumstances of this case, is it helpful to the husband that the wife in the previous divorce suit alleged and testified to charges of the vilest nature against him. The charges made in that suit did not give rise to his determination not to receive her back into his home. It is clear that, from the beginning of the separation, this was his settled intention.
We conclude, therefore, that that portion of the decree granting the respondent a divorce because of his wife's desertion must be reversed.
But the portion of the decree dismissing the wife's counter-claim should be affirmed.
The conclusion of the learned advisory master, that the action of the wife based on extreme cruelty mentioned above, was brought in bad faith, was well founded. The wife had testified in that suit that she would actually fear for her safety if she were to live with her husband. At the trial of the instant matter, the wife testified that she was not at that time in such fear. She was then asked, "Q. Why do you tell us now that you weren't afraid? A. You have a right to change your mind." Other evidences of bad faith need not be here set forth. *Page 370 
The voluntary departure of appellant from her husband's residence on April 1st, 1936, was not against the will of her husband. She knew that her husband did not oppose her leaving, and she knew also that it was his purpose not to ask or receive her back into his home. Her awareness of the latter may reasonably have contributed to her determination to institute the Chancery suits above referred to, but, notwithstanding, it is implicit in these matters and in her course of conduct as evidenced by the testimony that she had no genuine desire to resume the marital relationship with her husband. The fault of willfulness originating in the wife thus continued with her throughout. Therein is found the taint of bad faith. We are satisfied that the portion of the decree dismissing the counter-claim of the wife was properly entered.
The favor of our law concerning divorce goes only to an innocent party who has been injured in the particulars specified in the statute and who for that cause and in good faith prosecutes his action.
We have carefully examined the arguments of counsel and the several citations of authority offered, but except as the same are herein treated find them to be without application.
The decree appealed from is reversed as to the relief granted the husband, and is affirmed as to the dismissal of the wife's counter-claim.
For affirmance — PARKER, DEAR, JJ. 2.
For modification — THE CHIEF-JUSTICE, CASE, DONGES, HEHER, PERSKIE, PORTER, COLIE, WELLS, RAFFERTY, HAGUE, THOMPSON, DILL, JJ. 12. *Page 371