Marsh v. Marsh.

STEWART C. MARSH *vs.* ELIZA ANN MARSH.

A divorce cannot be had on the ground of adultery if the husband has been reconciled to his wife after the adultery committed by her, or knowingly retain her after she has committed adultery.

*O. S. Halsted,* for petitioner.

*Runyon,* for defendant.

THE CHANCELLOR. On the 6th of January, 1858, the complainant filed his petition in this court for a divorce on the ground of adultery. The adultery is alleged to have been committed in the months of March, April, May, June, and July, 1857, and especially with one J. H. G. Haines, on the 23d day of March, 1857, at the boarding house of the petitioner, in the city of Newark.

The defendant, by her answer, filed on the 15th of February, 1858, denies the charge preferred against her; and further, by way of defence, the answer states that for some time past she has been boarding at No. 3 Fair street, in the city of Newark, where the defendant has also boarded, and still boards, as the wife of the said petitioner, having occupied, and still occupying, the same apartment and bed with the said petitioner, and where this defendant and the said petitioner have and still do in all things maintain the relations and intercourse of husband and wife.

2 A*

Two questions are made by the pleadings and involved in the evidence.

1. Is the offence charged proved to have been committed?

2. Has the offence been condoned?

Before considering the evidence upon the question of the guilt or innocence of the defendant of the offence charged, it will be proper to consider the second question, *viz.* whether the offence, if committed, has been condoned; for if there has been a condonation of the alleged offence the complainant is not in a position to enforce his remedy; and so far as the result of this suit is concerned, it is a matter of indifference whether the defendant be guilty or innocent of the crime charged.

It is a familiar principle, that a divorce cannot be had on account of adultery if the husband has been reconciled to his wife after the adultery committed by her, or knowingly retain her after she has committed adultery.

Condonation may be implied if the husband, after reasonable knowledge of the infidelity of his wife, continues to admit her as the partner of his bed. *Poynter on Mar. and Divorce* 232.

In support of this principle, the author cites from *Oughton's Ordo Judiciorum, tit.* 214, the following passage. Though the party be proved guilty as alleged, yet if the complainant, before suit instituted, had notice, at least probable, of the crime committed and charged, and notwithstanding afterwards had carnal knowledge with the guilty party, the complainant shall have no decree of divorce, because by this it is said the complainant has forgiven and condoned the injury.

Reasonable knowledge may be said to have been had when information of a fact is given by credible persons, speaking of their own knowledge particularly, if the same facts be afterwards proved and they become instrumental in the proof. *Poynter on Mar. and Div.* 232; *Dobbyn* v. *Dobbyn, Ibid* 233, *note z.*

If the party accused of adultery shall prove that the accuser, before the commencement of the suit, had probable knowledge of the crime committed, and yet afterwards cohabited with the accused, in such case the accuser shall not obtain a sentence of divorce for the crime that shall be supposed to have been remitted. *Shelford on Mar. and Div.* 445; *Bishop on Mar. and Div.* § 359.

I have always understood (says Doct. Lushington, in delivering judgment in *Dillon* v. *Dillon*,) the legal principle to be this, that when a husband has received information respecting his wife's guilt, and can place such reliance on the truth of it as to act on it, although he is not bound to remove his wife out of his house, he ought to cease marital cohabitation with her. 3 *Curteis* 86.

The adultery is charged in the complainant's petition to have taken place from March to July, 1857, and the act more especially relied on is charged to have occurred on the 23d of March, 1857. That occurrence is proved to have taken place upon that day. If the witness speak truly, it affords the most material evidence of the defendant's guilt. Yet the only witness by whom that occurrence is proved to have taken place testifies that she told the complainant all that she saw soon after it occurred. She is sure that she told him before July 4th, 1857. Other circumstances, which occurred about the same time, and which are relied upon as corroborative evidence of the defendant's guilt, occurred at the boarding house where the parties and many others lived. They were not concealed, but many of them, in the language of one of the witnesses of the complainant, known to all the house.

It appears, then, as early as July 4th, 1857, the petitioner had not only probable knowledge, but if his witness is truthful, certain information of his wife's guilt. He had the very information from the lips of the same witness upon which he asks this court to pronounce his wife

guilty. He, at least, must be presumed to have deemed the witness credible, (for he has placed her on the stand) to sustain his case.

It is the very case stated in the books already cited as showing reasonable knowledge, *viz.* information of the fact given by a credible person speaking of her own knowledge, and the same fact afterwards proved and the informer becoming instrumental in the proof. It was natural to suppose, as was said by Doct. Jenner, in *Dobbyn* v. *Dobbyn*, that after the information he had received, if he entertained any doubt of his wife's guilt, he would have addressed himself to the persons who resided in the same house with his wife, or to those who visited her. All the facts appear to have been fully within his reach.

And yet the petition for his divorce was not filed until the 8th of January, 1858, six months after he received the information. During all this time he continued to cohabit with his wife as if nothing had occurred; and not only so, but what seems the most remarkable feature of the case, the evidence shows conclusively that the cohabitation continued up to the month of March, 1857, two months at least after the filing of the petition. The defendant, by her answer, filed on the 15th February, 1857, states that she and her husband were then occupying the same bed and cohabiting as man and wife. No less than four witnesses state the fact, that the parties continued together at their boarding house until the month of March, 1857. They occupied two rooms on the second floor. The petitioner occupied the front room as his office. The back room was his bed-room. It contained but one bed, and was occupied by both husband and wife. The proprietor of the house and his wife both state these facts, though they did not see the parties go to bed they both suppose that Mrs. Marsh slept in the bed in her husband's bed-room. Another witness, who lived in the house, says, as long as they were there together they occupied

the same sleeping room; I never knew any difference; I suppose they did; there was no more than one bed in it. Another witness, a female domestic in the family, says, I was with Mrs. Thompson for five months; was there when Mrs. Marsh left. Up to the time of Mrs. Marsh's leaving, Doctor and Mrs. Marsh occupied the same bed-chamber and the same bed.

The general presumption is that husband and wife living in the same house live on terms of matrimonial cohabitation. *Beeby* v. *Beeby*, 1 *Haggard's Ec. R.* 789; *Shelford on Mar. and Div.* 488.

It is enough, as against the husband, to raise a presumption of condonation that he had been once in bed with his wife after knowledge of her adultery. *Bishop on Mar. and Div.* § 364.

But here a continued matrimonial intercourse is shown, extending through weeks and months, after reasonable knowledge of the guilt of the wife is brought home to the petitioner.

This very decisive testimony is attempted to be overthrown by the parol evidence of a single witness as to a declaration made by Mrs. Marsh. The witness says, "she complained to me of being neglected by Doct. Marsh, and that others received his attentions, and that she knew no more about Doct. Marsh for the last six months as a husband than she did about me." The witness was examined on the 3d of September, 1860. On his cross-examination, he states that this conversation took place on the 12th of October, 1858, at the house of the defendant in Broad street. It is shown very clearly, by the defendant's evidence, that she did not move into Broad street until 1859. Whether uttered in October, 1858 or 1859, assuming the witness to have been perfectly reliable and accurate in his recollection, it is not perceived that the statement necessarily impugns in the least the fact of connubial intercourse shown to have continued between the parties for a long period.

It has not escaped the attention of the court that there is evidence of a transaction strongly tending (if believed) to show the guilt of the defendant, which occurred in February, 1857. But there is a twofold difficulty in making this circumstance the ground of a decree; for not only is connubial intercourse shown to have continued between the parties after it occurred, but it is proven to have taken place in the month of February, 1857, after the complainant's petition was filed.

It is difficult to conceive of a clearer case of condonation than is established by the evidence in this case. The legal presumption from the facts proved is, that the offence was forgiven. Upon well settled rules, the petition cannot be entertained.

This renders it unnecessary to examine the remaining issue in the cause, viz. the question of the defendant's guilt or innocence.

The petition must be dismissed.