MARY J. ROBINSON

*v.*

SAMUEL D. ROBINSON.

[Submitted January 22d, 1914.   Determined April 8th, 1914.]

1. Where the parties to a marriage celebrated the same in ignorance of an existing impediment, their apparent matrimonial cohabitation after the removal of the impediment will be regarded as carrying into effect their original purpose.

2. A decree of divorce will not be granted where the establishment of some essential element necessary to the relief sought depends upon the uncorroborated testimony of the petitioner.

3. The corroboration of the testimony of the petitioner on some matter essential to a decree of divorce need not be by other witnesses, but may be furnished by surrounding circumstances.

4. In a suit for divorce, where it appeared that the petitioner married defendant before the decree divorcing her from her former husband had been signed by the chancellor, evidence *held* to show that the parties intended a valid marriage, and matrimonially cohabited after the signing of the decree.

5. Before the decree granting her a divorce from her former husband had been signed by the chancellor, the petitioner celebrated a marriage with defendant, and, after the signing of the decree, the parties cohabited as husband and wife.—*Held*, that the rule that, in civil suits for criminal conversation and criminal prosecutions for polygamy, cohabitation and reputation will not establish the fact of marriage, does not apply in a subsequent suit by defendant for divorce from her second

husband on the ground of adultery, his adultery being of the most clandestine nature.

6. Judicial action cannot be predicated upon a presumption wholly repelled by the evidence.

On final hearing on petition for divorce.

*Mr. Townsend Godfrey,* for the petitioner.

*Mr. Ulysses G. Styron,* for the defendant.

LEAMING, V. C.

A brief statement of the facts of this case, as they appeared at the hearing of a petition for alimony *pendente lite,* will be found in *88 Atl. Rep. 951.* The date of the ceremonial marriage of the parties is there erroneously stated to have been July 15th, 1902; the correct date is June 15th, 1902. At final hearing the evidence conclusively established that defendant had committed adultery shortly prior to the institution of this suit as charged in the original petition. Complainant is entitled to a decree of divorce and alimony unless it shall be here ascertained that defendant is not her lawful husband.

At final hearing it was established that at the time of the ceremonial marriage between petitioner and defendant petitioner was a married woman, as her decree of divorce against her former husband was not signed by the chancellor until twenty-three days after her ceremonial marriage to defendant. Her testimony, however, was to the effect that at the time of her ceremonial marriage to defendant she believed that her divorce had been granted and that she was then free to marry defendant and that she accordingly married him in entire good faith. Petitioner's testimony fully convinces me that at the time of her ceremonial marriage to defendant she fully believed that she had then been divorced from her former husband and that she entered into that marriage contract with defendant in that belief and without an existing doubt in her mind touching its validity and binding force, and that she first learned that her divorce was in fact signed at a later date when that fact was

made the basis of a defence in this suit ten years later. If this conviction which her testimony has made upon my mind can be properly made a finding of fact in this suit, petitioner will thereby become entitled to the relief which she now seeks, for, as stated in *Collins* v. *Voorhees, 47 N. J. Eq. 555,* when the parties have intended marriage, being ignorant of an existing impediment, their cohabitation apparently matrimonial, subsequent to the removal of the impediment, may be regarded as "the carrying into effect by the parties of their original purpose."

But some difficulty arises in making the finding of fact above referred to by reason of the existence of a principle of law which has been uniformly recognized by the courts of this state to the effect that a decree of divorce will not be granted where the establishment of some essential element necessary to the relief sought depends upon the uncorroborated testimony of the petitioner. There is no testimony in this case, other than that of petitioner, to the effect that she originally entered into the contract of marriage with defendant in the belief that her divorce from her former husband had been granted and that she was free to lawfully marry defendant. From the nature of the case there can be none, for her mental attitude is known to her alone, and her solicitor who procured the divorce and from whom she claims to have been led to believe that her divorce had been granted has long since died. Such corroboration of her testimony touching her belief and purpose as exists is necessarily to be found in the circumstances surrounding the occurrence. But it is not necessary that corroboration should be supplied by the testimony of other witnesses. Surrounding circumstances, adequately established, may be of a nature to fully supply the office of corroboration which the law requires in matrimonial cases. That circumstances may be made the basis of corroborative evidence is clearly disclosed in *Foote* v. *Foote, 71 N. J. Eq. 273, 280.* Indeed the issue of marriage is not infrequently dominated by presumptions arising from circumstances.

The following facts and circumstances in this case are fully established by evidence other than the testimony of petitioner:

Her petition for divorce from her former husband was filed January 21st, 1901, or about one and one-half years before her ceremonial marriage to defendant. Defendant supplied the money to enable petitioner to procure her divorce to the end that petitioner and defendant could marry when the divorce should have been granted. The files of that suit have been received in evidence and disclose that the testimony of petitioner and her other witnesses was taken before the master to whom the case had been referred April 12th, 1902. The master's report advising a divorce bears date May 16th, 1902, and was filed May 19th, 1902. The adequacy of proofs made before the master sufficiently appears from the fact that a divorce was granted on those proofs. The final payment of the charges of petitioner's solicitor for her services in procuring the divorce was made May 12th, 1902 (a month after the testimony was taken), and that payment was made by a check drawn by the present defendant; that check has been received in evidence and bears the endorsement of the solicitor of petitioner. During the period that the divorce suit was pending and for a considerable time prior thereto, defendant boarded at petitioner's home, and the divorce suit was obviously brought and the money necessary for its prosecution supplied by defendant to enable the parties to marry when the impediment which they were mutually seeking to remove should have been removed. Petitioner is an illiterate woman who can neither read nor write. It thus appears that more than a month before petitioner and defendant celebrated their marriage adequate testimony to support a divorce had been concluded, and nothing had occurred to change the mutual purpose of the parties to remove the impediment to their marriage before marrying. They mutually desired to marry and mutually realized the necessity for the removal of the impediment before they could lawfully marry, and for the accomplishment of their lawful purpose petitioner had supplied all the necessary testimony and defendant had supplied all the necessary money. Under these circumstances it becomes practically impossible to believe that petitioner, without any possible reason for change of purpose of plan, determined to deceive defendant and celebrate a marriage which she knew to be unlawful and void, and

to that end falsely stated to defendant that she was then free to marry. From her viewpoint of illiteracy the case had been tried and finished and she may well have understood some general statement of her solicitor to the effect that there remained nothing more for her to do as meaning that she was then free to marry. It is not probable that her solicitor told her that her divorce had been granted, but it seems impossible to escape the conviction that such was her belief.

As already stated the testimony of petitioner carried conviction of its honesty. Inaccuracies appear in her testimony but not to a greater extent than may be reasonably expected in view of the period of time to which it referred, and I am fully convinced that she married defendant in good faith believing that she was at the time free to lawfully marry him, and I am satisfied that the circumstances surrounding and precedent to the occurrence are adequate to supply the necessary corroboration of her testimony to that effect.

I think it should be also observed that the present case differs in another important aspect from the case of *Collins* v. *Voorhees, supra*. In the opinion filed in that case it is stated that it was found as a fact that the husband "knew that he had no legal power or right to contract this second marriage, that he was aware that the divorce fraudulently obtained by him was a nullity; what he did consent to was to deceive the so-called second wife, and to live with her with the appearance of being married to her." In the present case at the time the parties formally celebrated their marriage, the divorce suit which had been instituted to enable them to become husband and wife had been prosecuted to its practical conclusion and only awaited the signature of the chancellor to the final decree. Should it be here ascertained that petitioner's present testimony to the effect that she then believed she was free to marry defendant is insufficiently corroborated to warrant an affirmative finding of that fact, it is yet clear that a finding that she then knew she was not free to marry defendant cannot be justified, and it is entirely certain that both parties then desired to marry and that their mutual desire to be husband and wife continued thereafter for

a period of ten years, and that both parties at the time of their ceremonial marriage necessarily knew that the divorce would soon be granted whether or not either of them then knew it had not in fact been granted. In such circumstances the presumption of continuous meretricious purpose, which was under the facts necessarily made the basis of the decision in *Collins* v. *Voorhees, supra,* finds but feeble if any support in either reason or authority. The authorities applicable to this aspect of the case are reviewed in *1 Bish. Mar., D. & S.* §§ *960–976.* The test which the learned author adopts as sustained by the weight of authority is *whether the parties desire marriage.* In *Collins* v. *Voorhees, supra,* it was found that the husband did not desire marriage and could not have desired marriage at any time because he knew that his divorce was fraudulent and void, and that his real desire was to live in illicit relations with the woman with whom he cohabited; whereas in the present case the evidence renders it clear that both parties at all times during the ten years of their cohabitation desired marriage. At section 970 the rule is stated in *1 Bish., supra,* as follows:

"If the parties desire marriage, and do what they can to render their union matrimonial, yet one of them is under disability—as, where there is a prior marriage undissolved—their cohabitation, thus matrimonially meant, will in matter of law make them husband and wife from the moment when the disability is removed; and it is immaterial whether they know of its existence, or its removal, or not, nor is this a question of evidence. This doctrine is overlooked in some of the cases, but it is abundantly sustained by others, and the reasoning on which it rests is conclusive."

Where at the time of a ceremonial marriage an impediment to a lawful marriage in fact exists the burden in a suit of this nature may be appropriately said to rest upon the party who was thus incapacitated to establish good faith by evidence adequately corroborated; but when it appears, as it appears in the present case, that the disability was in process of removal by the concurrent efforts of the parties for the sole purpose of enabling them to become husband and wife, and the removal of the disability was accomplished shortly after their ceremonial marriage as the result and necessary consequence of their prior concurrent efforts, and after such removal of the disability the

parties continue to cohabit and make themselves known to the world as husband and wife for a period of ten years, there flows from their conduct such an obvious purpose and desire to be husband and wife as to clearly overcome any inference of meretricious purpose on the part of either that may, in other circumstances, appropriately arise from the fact that at the time of the ceremonial marriage an impediment to marriage existed with knowledge of which one or both of the parties were chargeable. The language of Chief-Justice Hemphill touching presumptions flowing from conduct matrimonial, in *Yates* v. *Houston, 3 Tex. 433, 450,* referred to in *1 Bish. M., D. & S.* § *966,* is, in this connection, well worthy of consideration. He says: "But admitting that their original intercourse was illicit with knowledge of both parties, it would be urging the presumption to an unreasonable extent to suppose that the unlawful character of the connection was unsusceptible of change, and that, when all legal disabilities had ceased to operate, they would voluntarily decline all the honors, advantages, and rights of matrimony, and prefer an association disgraceful to both parties, but peculiarly degrading to the female, and which inflicted upon their innocent offspring the stigma and penalties of illegitimacy. Let it be admitted that this woman had knowingly wandered from the paths of virtue, and that in the weakness of human frailty she had originally yielded to the arts and seductions of the deceased, yet the conclusion does not necessarily follow that the latter would be unwilling to repair, as far as possible, the wrongs he had inflicted, or that the former would of choice continue in a position so humiliating. * * * The judgment which would presume that erring humanity would not repent and reform is too harsh to have a place in any beneficial system of law, and we cannot yield our assent to any such doctrine."

I am convinced that at the time of the ceremonial marriage between petitioner and defendant both believed that no impediment existed to their lawful marriage. But if, perchance, petitioner may have known at that time that her divorce had not been granted, I am equally convinced that the evidence in this case sufficiently discloses that subsequent to the removal of that disability the parties cohabited with mutual purpose and in-

tent to be husband and wife and made themselves known to the world as such.

In ascertaining the marriage of petitioner and defendant sufficiently established by the evidence in this case I have not overlooked the fact that in civil suits for criminal conversation and in criminal prosecutions for polygamy, cohabitation and repute are deemed insufficient to establish the fact of marriage; and it may be also conceded that in some circumstances this may be the rule in a suit for divorce upon the ground of adultery. See *1 Bish. M., D. & S.* §§ *1026, 1038.* The reason for this rule appears to be that the second cohabitation carries with it presumptions similar to the former cohabitation and repute and thereby weakens the force of the presumptions relied upon. But the present case is exceptional in its nature and is fraught with circumstances which render any presumption of innocence in the second cohabitation wholly impossible. An affidavit filed by defendant to resist an order for alimony *pendente lite* sets forth that at the time of the ceremonial marriage he believed that the divorce of petitioner had been granted and that he first learned to the contrary subsequent to the filing of the petition for divorce herein. By his own sworn statement it is thus disclosed that at the time he had sexual intercourse with the co-respondent in this suit he believed that he was the lawful husband of petitioner. The evidence which has been introduced to establish defendant's adultery also discloses that at the time of his adultery he was still living with petitioner as her husband and that his sexual intercourse with co-respondent was of the most clandestine nature and under circumstances which wholly negative the idea of innocence upon his part. Any suggestion of a presumption of either innocence or matrimonial intent upon the part of defendant in connection with his intercourse with co-respondent, under the circumstances stated, may be appropriately characterized as a rank absurdity, and the weakening or neutralizing influence or effect of such a presumption, which in certain classes of cases has been recognized, is here wholly absent. It is impossible to predicate judicial action upon a presumption which is wholly repelled by the evidence.

I will advise a decree of divorce *nisi,* and will ascertain the amount of alimony at the signing of the decree.