Fred Edmund Howes, petitioner-respondent,

*v.*

Grace E. Howes, defendant-appellant.

[Argued October 24th, 1938. Decided February 6th, 1939.]

*Mr. Sebastian Gaeta,* for the petitioner-respondent.

*Mr. George W. Mackay* (*Mr. George Bratt, Jr.,* of counsel), for the defendant-appellant.

The opinion of the court was delivered by

BROGAN, CHIEF-JUSTICE.

This is an appeal by a wife from a decree awarding a divorce to the petitioner-husband on the ground of her desertion. A cross-petition by the wife charging the husband with desertion was dismissed.

The parties, Fred Howes and Grace Howes, were married in 1913, in this state. The husband has continuously resided here; the wife, since 1924, has not. They have one child, born in 1921. From the date of her marriage, and up to the time the child was born, the wife went to business. In the year 1924 the wife, with the consent, if not at the suggestion of her husband, went with the child to Northfield, New York, to live. Her mother accompanied her. It is intimated in the testimony of the husband that the stay in Northfield was to have been temporary. The child, since the time of the departure to Northfield, has been exclusively in the charge of his mother. The record discloses that the husband did not

seek to have his wife return to New Jersey until some time after the death of the wife's mother, which was in 1929.

The husband charged in his petition that his wife deserted him in November, 1931. His petition for divorce was filed in December, 1936.

It is conceded that when the wife went to New York State to live that act did not constitute a desertion. Mere separation of wife from husband does not amount to desertion. To constitute desertion a wife must absent herself from her husband of her own accord, without his consent and contrary to his wishes. There must be a present intention to desert the other party. But, of course, such separation as occurred here may become a desertion in the legal sense if persisted in against the will of the husband, and this is the theory of the husband's case that the separation in which he acquiesced became a desertion that was continued, willful and obstinate for the statutory period because persisted in contrary to his wishes. The advisory master concluded that this was so and awarded a decree to the husband. We do not concur in his finding. Indeed we think that, assuming a desertion to have come into being and continued for the statutory period, so far as we can appraise and judge human conduct, it was not obstinate and the decree in favor of the husband will have to be reversed.

The husband, to prove his case, relies on his own testimony and the mute evidence of some letters written him by his wife and others written by him to his wife, which he contends corroborate his charge. Reference will be made to those letters later. The husband testified that he married his wife on October 3d, 1913; that they lived together in Bogota, New Jersey, until the year 1924, when his wife, with their infant son and her mother, went to Northfield, New York. There is no testimony that prior to the wife's leaving there was any domestic disagreement or unhappiness. The record is silent on any event in the lives of these people prior to the time the wife left this state. He says that he went to see his wife and child three or four times a year thereafter, "maybe more or less;" that her mother, who was with them, died on

December 5th, 1929; and that thereafter he and his wife had "considerable controversy" over her returning to live with him. It is a reasonable inference at this juncture that her leaving in 1924 and remaining away until 1929 was quite agreeable to the husband. He further testified that he asked her to come back several times from the end of 1929, to November 1st, 1931, and that during the entire period of absence he sent her $15 a week for the support of herself and the boy. His income was a little more than $3,000 a year. On cross-examination he testified that whenever he visited Northfield up to November 1st, 1931, he and the defendant lived as man and wife. When asked if he went to Northfield after November 1st, 1931, he said, "I have called there to see the boy." On being asked if he went there to see his wife he replied that he did not. He stresses the fact repeatedly that he did not go to see his wife at any time after November 1st, 1931, e. g., "I saw her when I called there but I didn't go to see her." Asked if, on his visits to Northfield, he went to the house where his wife lived, he answered, "sometimes, not always." Replying to a question whether he asked his wife to come back on the occasion of these visits, he answered, "not after November 1st, 1931," and when asked if he ever told her that he had a home provided for her in New Jersey, he answered, "no," and reaffirmed his previous statement that after November, 1931, he never asked her to come back to him. During this interval he lived in a two, sometimes in a one-room apartment in Bergen county, New Jersey.

On re-direct examination the petitioner husband modified his testimony by saying that after the desertion date fixed by him he wrote certain letters—three in number as we have them in the record—inviting his wife to return to New Jersey and live with him. But nowhere in the remainder of his testimony does he qualify the statements made on cross-examination that on his visits to Northfield after November 1st, 1931, he did not seek out his wife or even bother to go into the house in which she lived, to talk to her about coming home with him.

These letters offered in confirmation of his asserted attitude that he wanted his wife to return to him were written on

276

May 17th, May 26th and June 3d, 1933—a compass of seventeen days. Each contains the wish that his wife would return to him but when contrasted with his conduct when he visited the town where his wife resided, the letters have all the earmarks of having been written to bolster up his claim that the alleged desertion was obstinate. "Actions speak louder than words"—even written words—and the letters when paralleled with his acts are weak reeds as corroboration. In fine, we think his testimony stands uncorroborated since the letters, in the circumstances exhibited in this case, are valueless for that purpose. Every element necessary to sustain a decree of divorce must be corroborated. This principle is settled and has been confirmed too often in our reports to require copious citation. See cases cited in *Hague* v. *Hague, 85 N. J. Eq. 537, 541.*

In the record before us is one more letter written by the husband and produced by the wife. We think it important as disclosing his feeling towards his wife at that time. It bears date June 15th, 1930. In it the husband discusses certain obligations that the wife incurred and tells her that he has no objection to what she purchases so long as she arranges to pay the bills. He then continues:

"The school year will end in a few days and it would seem to me the thing for you to do would be to make up your mind what you are going to do and then do it, and the right way to do that is to get in something that you are trained for and not something that you think you might like, (*sic*). You are trained and you make a good appearance and that is a lot in your favor. The only thing that you lack is sticktoittiveness. Grace, I don't think that you mean to be unfair and I think that you would make the right type of a man a good wife, but you and I are not the types that get along well together and if you were to get out in the world and fix yourself up, as you can, mix with people, as you also can, you no doubt would meet someone that you could be happy with and I certainly would not stand in your way. You all (*sic*) wrapped up in your boy. That is nice and a mother that doesn't think a lot of her child is not much good, but you must remember that he won't be a boy always. * * *"

We conclude that the letters of 1933 were wholly insincere. And this must be so when contrasted with his actions during that period not to mention his 1930 letter in which, in unmis-

takable terms, he invites his wife to obtain a divorce. Whether the wife was guilty of a desertion in a legal sense is not free from doubt, but, conceding that to be the fact and that it was continued and willful, we are convinced that it was not obstinate. We are not unmindful of the rule in cases of desertion that where the facts and circumstances make it manifest that the husband's honest effort to terminate the separation would be unavailing, that duty does not exist. *Hall* v. *Hall, 60 N. J. Eq. 469, 470.* But such is not the case here. Beyond saying that he and his wife had "considerable controversy" over whether she should return home after her mother's death in 1929, the record is bare of any facts that tend to prove the wife was adamant to sincere advances on his part that she return to him; and we have the husband's own admission that he never told her that he had a home provided for her.

"That a desertion, in order to be obstinate, must be persisted in against the willingness of the injured party to have it concluded is declared by all our cases; and, ordinarily, when the husband has, by his conduct towards his wife, contributed in any degree to her original desertion, the law requires that he should evidence that willingness by making such advances or concessions to his wife as might reasonably be expected to induce her to return to him." *Hall* v. *Hall, supra.* See, also, *Davenport* v. *Davenport, 97 N. J. Eq. 14,* wherein the leading authorities are collected.

Now while the fact findings of the advisory master are entitled to great weight for the obvious reason that he, as a trier of the facts, sees the witnesses under examination and registers certain impressions from their conduct, yet in this case there is insufficient testimony of the wife's desertion—certainly the original separation did not savor of desertion—or, conceding that there was a desertion and that it was continued and willful, the proof submitted to sustain the equally indispensable element, that the desertion was obstinate, is completely lacking in persuasiveness that the husband's written overtures were sincere. In the record before us the wife counter-claimed for a divorce for the husband's desertion. But her testimony, in the main, consisted of

·defending herself against her husband's charge of desertion; nor is there any argument in her brief that she has made out her charge of desertion against the husband.

The part of the decree dismissing her cross-petition will be affirmed and that part which awards the petitioner a divorce will be reversed. Both petitions should have been dismissed, and the record is remitted so that such action shall ·be taken.

*For affirmance*—PARKER, CASE, JJ. 2.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, BODINE, DONGES, HEHER, PERSKIE, PORTER, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, WALKER, JJ. 13.