THELMA CUSICK, petitioner-appellant,

*v.*

FRANK CUSICK, defendant.

[Argued October 23d, 1940. Decided February 3d, 1941.]

*Mr. Louis Santorf,* for the petitioner-appellant.

The opinion of the court was delivered by

WELLS, J.

This is an appeal from a decree of the Court of Chancery dismissing the wife's petition for a divorce from her husband on the ground of desertion. The case was uncontested.

The only evidence offered by the petitioner was her own testimony, the testimony of one DeYoung, and the marriage certificate.

The parties were married October 5th, 1929, and at the time of the marriage they were both living in the State of New Jersey, and continued to reside there up until the time of the hearing June 21st, 1940.

So far as the record discloses there was no marital difficulties from the time of the marriage up until December 11th, 1937, when the parties separated under circumstances presently to be related.

For two years prior to the separation they had lived together as man and wife at 105 Parker avenue, Hawthorne, Passaic county, New Jersey. The husband was employed at

the time of his marriage and up until the time of the hearing as an employe in the Paterson post office. Two children were born of the marriage, a boy now ten and a girl seven years of age. They are now in a home.

The husband on Saturday nights was accustomed to going to the saloon of one DeYoung at Paterson and assisting him in tending bar. On Saturday evening, December 10th, 1937, DeYoung called at the apartment of the petitioner and defendant in Hawthorne and took them in his automobile to his saloon and the defendant there assisted him that evening in tending bar. About three o'clock the following morning DeYoung returned with them and two other couples to their apartment, the intention being to have a party. DeYoung brought along a bottle of apple whiskey and there was some drinking at the apartment. The two couples "started fooling around" and the defendant husband "started fooling also" with one of the girls and finally took one of them and went into the parlor and pretended to be asleep. He, however, finally came out of the parlor and, finding his wife sitting on DeYoung's lap, he became incensed and accused them of making love to one another, stating that he had heard his wife say that she loved DeYoung. This they both denied. He ordered DeYoung to leave and threatened to "punch" his wife, "pushed her around for awhile," threatening that unless she did leave he would put her out. She begged him not to do this, assuring him that there was nothing to the affair and that everything would be all right, and that after all they were all "going out that night." DeYoung also implored him not to put his wife out and promised that he would not call at the apartment any more, to which the defendant replied—"If you don't get out I will push her out before you get out." All this time defendant's wife was coaxing him not to put her out. In spite of all protestations, the husband "pushed his wife out." DeYoung followed her and asked her where she intended to go and she replied that she was going to her "mother's and father's." They lived in Paterson.

The party had continued from three o'clock until some time after five in the morning and instead of going immediately

to the parents' home, the testimony is that DeYoung drove the petitioner around for about an hour and a half or two hours, "until her parents got up."

The petitioner testified that she remained in the home of her parents for over a year and then she went to live with her sister at Hawthorne for about six weeks and from the sister's home she moved to 51 Clark street, Paterson, and lived there alone up until the time of the hearing, that during all this time she had been visited by DeYoung "now and then."

Petitioner further testified that she had seen her husband about ten times since the separation; the time, place and circumstances not being stated. She did testify, however, that he was still working in the Paterson post office and that he had never come to see her with reference to her marital status, nor did he ever ask her to come back, and that she had not cohabited with him since December 11th, 1937.

At the conclusion of the testimony the advisory master advised the petitioner's attorney that he considered that this was a constructive rather than a simple desertion case, citing *Succhierelli* v. *Succhierelli, 101 N. J. Eq. 30,* &c., whereupon after some argument the petitioner's attorney, first insisting that it was a simple desertion, finally said it was a constructive desertion and asked to amend his petition, to which the advisory master replied that he would permit the amendment, but on the merits of the case he was going to advise a decree dismissing the petition. The advisory master also declined to reopen the case to permit the petitioner to bring in additional proof, the purpose of which was to prove that the husband was not drunk and that he put his wife out.

In the advisory master's conclusions, after reciting some of his impressions of the testimony, he stated that the undisputed testimony in the case showed that the petitioner was not without fault, but, in reality, the provocation was on her part and not on the part of the defendant, that what happened she brought upon herself.

The advisory master then concluded as follows: "The conduct of the petitioner on the evening and early morning in question, and her conduct subsequent to the separation,

and her association with the witness DeYoung on and after December 11th, 1937, leads the court to believe that she was not an unwilling victim; that the separation was not against her will and consent, and that the separation and its continuance was agreeable to her, and therefore not obstinate on the part of the defendant."

In reaching this conclusion we think the advisory master erred.

Whether the case be one of simple desertion or constructive desertion makes little difference here, except as to the pleadings. If it was a simple desertion on the part of the husband, as the petitioner's solicitor first insisted it was, the law imposed upon him a duty to use active efforts to bring the separation to an end. *Norcross* v. *Norcross, 82 N. J. Eq. 195.* This the defendant did not do.

"If a husband drives his wife from his house, and if she is allowed to stay away for two years without solicitation to return and proper assurances of better treatment on his part, it is constructive desertion by the husband for which the wife is entitled to a divorce." *Hauenstein* v. *Hauenstein, 95 N. J. Eq. 34.*

If it was a constructive desertion, as the advisory master held, it was the duty of the offending party to endeavor to terminate the separation by manifesting reformation and applying for restoration of marital relationship, giving reasonable assurance of sincerity and probable safety of the injured party in resuming cohabitation. *Danielly* v. *Danielly, 93 N. J. Eq. 556.* Neither did the husband do this.

The only legal justification for a husband or wife putting an end to an existing cohabitation is by misconduct of one of them, provided such misconduct is itself a ground for divorce *a vinculo* or a divorce *a mensa. Csanyi* v. *Csanyi, 93 N. J. Eq. 11.*

It is obvious from reading the testimony that the petitioner did not commit such misconduct. The most that can be said is that her conduct toward DeYoung, manifesting expressions of affection, constituted proof of inclination. There was no testimony whatever that there was any opportunity to commit the act of adultery. The defendant, there-

fore, had no legal right to evict petitioner because of her conduct with DeYoung and consequently he·was the offending party. The petitioner's testimony, which was corroborated by DeYoung, showed that she was evicted against her protests and pleadings.

At the beginning of the desertion, therefore, it is clear that the separation was against the wife's will and consequently it became the duty of the husband to endeavor to bring this separation to and end and to have the marital rights restored. There is no testimony in the case that the continuance of the separation was agreeable to her. We conclude therefore that the finding of the advisory master that the desertion was not·obstinate on the part of the defendant is contrary to the law and the facts of the case.

Notwithstanding this, however, an examination of the record convinces us that the decree of the Court of Chancery dismissing the petition should be affirmed, not for the reasons stated by the advisory master, but because we find in the record no competent corroborating evidence establishing the continuity of the desertion.

This court in *Howes* v. *Howes, 125 N. J. Eq. 272,* said: "Every element necessary to sustain a decree of divorce must be corroborated. This principle is settled and has been confirmed too often in our reports to˙ require copious citation. See cases cited in *Hague* v. *Hague, 85 N. J. Eq.* (at *pp. 537-541*)."

The advisory master found that the marriage and residence were amply proved and corroborated.

The statute relating to divorce for ·desertion provides that the desertion must be (1) willful; (2) obstinate; (3) continued. *R. S. 1937, 2:50-2.*

DeYoung was the only witness produced to corroborate the petitioner's testimony that from the time of the separation to the time of the hearing she and her husband had not cohabited as man and wife. We do not ·think he was in a position to so testify. His testimony was that during the time petitioner was living with her parents he visited her "once in awhile;" that during the time she was living ·at her sister's home in Hawthorne, he did not go to the house

but "just met her once to see that everything was all right. That was all;" that during the time petitioner lived at 51 Clark street he visited her there "occasionally." The testimony of petitioner that during this period of time DeYoung had visited her "now and then" added no weight to his testimony on this point.

Mr. Francis Child in his book entitled *The Law of Divorce* (*Ed. 1929*) *137,* says:

"The continuity of the desertion must be corroborated by testimony of some person who is sufficiently intimate with the petitioner to testify that the defendant has never resumed marital relations with such petitioner. The rule in all matrimonial cases is, that the best evidence must be produced, and the best evidence to corroborate both the continuity of the desertion and the petitioner's residence, or the defendant's residence is the testimony of persons who lived with such petitioner or defendant, or if no persons lived in the same house with them, then by the testimony of near neighbors as to such residence."

No explanation is offered for the failure to procure and present the testimony of one or both of the parents of the petitioner and the testimony of the sister and of one or more of her neighbors at 51 Clark street where she lived alone. Manifestly the testimony of these relatives and neighbors with whom and near whom petitioner lived from the time of the separation would have been the best evidence to corroborate the fact that defendant never resumed marital relations with petitioner.

Neither the testimony of petitioner nor DeYoung discloses the number of visits DeYoung made to the various homes where petitioner was residing during this period, the length of time he remained, whether his visits were by day or by night or any facts in connection therewith. So far as the testimony is concerned, petitioner and defendant could have been living together as husband and wife during the entire period of the separation and DeYoung not have known anything about it.

Furthermore, the required corroboration was not furnished by "surrounding circumstances adequately established" which, in some cases, may suffice when testimony of witnesses cannot

be procured. Here, as stated before, the corroboration depends solely upon the testimony of the witness DeYoung.

A careful examination of the record leads us to the conclusion that DeYoung totally failed to qualify as a competent corroborating witness to the continuity of the defendant's desertion, and for this reason we are of the opinion that the petition was properly dismissed.

The decree is affirmed.

*For affirmance*—THE CHIEF-JUSTICE, CASE, HEHER, PORTER, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, JJ. 9.

*For reversal*—PARKER, BODINE, DONGES, PERSKIE, JJ. 4.