33 N.J. Super. 272 (1954)
110 A.2d 57
PHYLLIS E. CROWELL, PLAINTIFF-RESPONDENT,
v.
ROBERT S. CROWELL, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 22, 1954.
Decided December 7, 1954.
*273 Before Judges CLAPP, JAYNE and FRANCIS.
*274 Mr. Joseph Bigel argued the cause for appellant (Messrs. Bruck & Bigel, attorneys).
Mr. Louis Santorf argued the cause for respondent.
The opinion of the court was delivered by JAYNE, J.A.D.
The earliest English decisions relative to the legal effect of the willful refusal of matrimonial intercourse emanated from actions for the restitution of conjugal rights in the ecclesiastical courts. Forster v. Forster, 1 Hag. Cons. Cas. 144 (1790), was perhaps the first.
In Gill v. Gill (1823, unreported, but referred to in the report of Orme v. Orme, 2 Addams 382), the court ordered the husband "to take his wife home and treat her with conjugal affection."
It was soon realized that the courts could enforce cohabitation but could not control the use of the bed.
Recently, in Weatherley v. Weatherley, A.C. 628 (1947), the House of Lords decided that the mere refusal by a husband or wife to have sexual intercourse with the other, however willful and unjustified, cannot of itself amount to desertion.
In Scotland, for example, where the law of divorce is older than in England, the authorities seem to hold that the willful abstention does constitute desertion.
Since the decision in Raymond v. Raymond reported in 79 A. 430 (Ch. 1909), it has become well established in this State that the unjustified refusal of sexual intercourse persisted in willfully, continuously, and obstinately by a spouse for a period of two years constitutes a ground for the dissolution of the marriage for the cause of desertion. This chronological assemblage of decisions reveals the variety of factual circumstances with which our courts have been concerned in such cases: Rector v. Rector, 78 N.J. Eq. 386 (Ch. 1911); Parmly v. Parmly, 90 N.J. Eq. 490 (Ch. 1919); Horwath v. Horwath, 91 N.J. Eq. 435 (Ch. 1920); McLain v. McLain, 91 N.J. Eq. 530 (E. & A. 1920); Wood v. Wood, 97 N.J. Eq. 1 (Ch. 1925); Rupp v. Rupp, 97 N.J. Eq. 201 (Ch. 1924); Haskell v. Haskell, 99 N.J. Eq. *275 399 (E. & A. 1926); Johnson v. Johnson, 102 N.J. Eq. 550 (E. & A. 1928); Hausle v. Hausle, 104 N.J. Eq. 230 (Ch. 1929); Verro v. Verro, 104 N.J. Eq. 364 (Ch. 1929); Gilson v. Gilson, 113 N.J. Eq. 32 (E. & A. 1933); Becker v. Becker, 113 N.J. Eq. 286 (Ch. 1933); Haviland v. Haviland, 114 N.J. Eq. 96 (E. & A. 1933); Langille v. Langille, 119 N.J. Eq. 12 (E. & A. 1935); Pierson v. Pierson, 119 N.J. Eq. 19 (E. & A. 1935); Rains v. Rains, 127 N.J. Eq. 328 (E. & A. 1940); Munger v. Munger, 130 N.J. Eq. 279 (E. & A. 1941); Kreyling v. Kreyling, 20 N.J. Misc. 52 (Ch. 1942); Ullrich v. Ullrich, 26 N.J. Misc. 333 (Ch. 1947); affirmed 142 N.J. Eq. 734 (E. & A. 1948); Franklin v. Franklin, 140 N.J. Eq. 127 (E. & A. 1947); Tucker v. Tucker, 142 N.J. Eq. 687 (E. & A. 1948); Sabia v. Sabia, 16 N.J. Super. 273 (App. Div. 1951); Streader v. Streader, 18 N.J. Super. 433 (App. Div. 1952).
Causes of action of this nature are naturally difficult to establish. The plaintiff must assume the burden of proving that the defendant's refusal to engage in such marital relations has been continued, willful, and obstinate.
In these cases it is very often acknowledged that the parties have during the period of the alleged desertion or during a greater part thereof cohabited in the same house, or occupied the same bedroom and, indeed, the same bed. As early as 1861 Chancellor Green in Marsh v. Marsh, 13 N.J. Eq. 281, 285, stated: "The general presumption is that husband and wife, living in the same house, live on terms of matrimonial cohabitation." Vide, also, Stieglitz v. Stieglitz, 92 N.J. Eq. 292 (E. & A. 1920); McCabe v. McCabe, 129 N.J. Eq. 431 (E. & A. 1941); Franklin v. Franklin, supra; Tucker v. Tucker, supra.
And then, too, all uncertainties of fact are resolved against the plaintiff. Sheeran v. Sheeran, 115 N.J. Eq. 75 (E. & A. 1934); Gordon v. Gordon, 89 N.J. Eq. 535 (E. & A. 1918).
No doubt the paramount difficulty in sustaining such a cause of action is the necessity of producing the required degree of corroboration of the essential elements. "To *276 `corroborate' means to strengthen; to make more certain; to add weight or credibility." Orens v. Orens, 88 N.J. Eq. 29, 33 (Ch. 1917). There must be corroboration of the plaintiff's testimony of the defendant's willful avoidance of conjugal intercourse. Cf. Clayton v. Clayton, 8 N.J. Super. 1 (App. Div. 1950). True, the corroboration need not come exclusively from testimony of witnesses. It may be logically generated by proof of the relative surrounding circumstances. Robinson v. Robinson, 83 N.J. Eq. 150 (Ch. 1914), affirmed 84 N.J. Eq. 201 (E. & A. 1915); Becker v. Becker, supra; Pfeiffer v. Pfeiffer, 1 N.J. 55 (1948).
Moreover to constitute desertion, the abstention from sexual relations must have been without just cause or reason. The wrongful intent is of the essence of the cessation. Haviland v. Haviland, supra; Munger v. Munger, supra.
However, unless "the entire picture" revealed by the evidence "carries with it a moral conviction that can be sensed from all the surrounding circumstances, the relief asked for should be denied." Franklin v. Franklin, supra. In all divorce actions there is the consideration which my associate Judge Francis mentioned in Pisciotta v. Buccino, 22 N.J. Super. 114, 116 (App. Div. 1952): "The marriage contract is regarded as a triaded one, with the State as the third party, because the status achieved thereby is the foundation of our society." Vide, Fink v. Fink, 30 N.J. Super. 531, 533 (Ch. Div. 1954).
It is with recognition of the rationale of the aforecited adjudications that the consideration of the present appeal is undertaken. Here the parties were married on January 5, 1943. Two children were born of the marriage. The wife complains that ever since August or September 1950 her husband has willfully, obstinately, and continually persisted in his unjustified refusal to have sexual intercourse with her. Notably both parties are relatively youthful. She is 28 and he is 33 years of age. They occupied a double bed until March 1951 and thereafter used twin beds in the same bedroom and did so at the time of the trial.
*277 Although the discontinuance of sexual relations in 1950 is mutually acknowledged as, for example, in Haviland v. Haviland, supra, the defendant husband nevertheless resists the plaintiff's alleged accusation and asserts that the termination of such relations has been attributable solely to the inexcusable disinclinations of the plaintiff. The repugnant positions of the parties in this litigation dispels any notion of the existence of collusion. Cf. Parmly v. Parmly, supra, 90 N.J. Eq. on page 498.
There are certain circumstances disclosed by the evidence which have particularly attracted our attention. Commencing in 1949 and continuously thereafter until the Sunday preceding the trial of this action, the plaintiff contrary to the wishes of the defendant has been employed at night as a waitress at various clubs. For extended periods during this span of years she has chosen to work six and sometimes seven nights of the week from five P.M. until three A.M. Her husband was employed during the day as a draftsman. His explanation is that in response to his overtures the plaintiff would reply, "leave me alone  I'm too tired."
Another event. After the birth of her second child the plaintiff acknowledges that she informed the defendant that she "wanted no more children." In March 1951 a friend was visiting her who was "four months pregnant." Singularly on that day the plaintiff admittedly, without first consulting the defendant, removed the double bed from the bedroom and substituted the twin beds which had been theretofore occupied by the two children in another room.
Still another significant occurrence. In October 1952 the plaintiff consulted a physician concerning a gynecological condition causing her abdominal pains. This consultation occasioned an interview between the physician and the defendant. The doctor gave this account of the interview:
"I told him that his wife had stated that as long as I was operating on her, she wanted to have her tubes tied so that she couldn't have any more children, and I told her she would have to get her husband's consent, and I think the way it was, he already signed a consent and apparently he didn't know what it was, thinking it was *278 an operation, and when he found out what it was, he took it back. I spoke to him and asked him what he intended to do, and he said that he didn't see any reason for doing that, and said, `I haven't had anything to do with my wife for a couple of years  I haven't bothered with her,' or something to that effect. I told him that if he didn't consent, I couldn't do it, and that was that.

* * * * * * * *
Q. Doctor, do you recall Mr. Crowell asking you whether or not the matter of tying the tubes was necessary for the protection of his wife's health? A. Yes.
Q. And do you remember saying it was not necessary? A. Yes.
Q. Do you remember him saying to you then, as long as it was not necessary, he would not consent? A. Yes, he said that."
The occurrences to which we have referred, the happening of which the plaintiff frankly admitted, seem to have materially enfeebled the confidence in and persuasiveness of her accusation against her husband. Accordingly robust corroboration became fateful.
True, the defendant admitted the nonfulfillment of connubial conduct, but he adversely ascribed it to the obstinacy of the plaintiff. Obviously mere proof of the inexistence of sexual intercourse does not establish a willful and obstinate refusal by the defendant.
The rule is firmly established in this State that a divorce will not be granted upon the uncorroborated admissions or testimony of a party to the suit. Hague v. Hague, 85 N.J. Eq. 537, 541 (E. & A. 1916). Not only does the rule apply to the cause, but to every element in the proofs necessary to sustain it. Garrett v. Garrett, 86 N.J. Eq. 293 (Ch. 1916); Howes v. Howes, 125 N.J. Eq. 272 (E. & A. 1939); Cusick v. Cusick, 129 N.J. Eq. 82 (E. & A. 1941).
The state of the evidence in the present case in its essential respects and in its inadequacy closely resembles that existing in McLain v. McLain, supra.
The judgment nisi in favor of the plaintiff is reversed except the allowance to her of the counsel fee and costs, which award by the trial judge is affirmed.