JOHN J. SHEERAN, petitioner-appellant,

*v.*

CATHERINE FALLON SHEERAN, defendant-respondent,

[Submitted October 28th, 1933. Decided January 5th, 1934.]

*Mr. Lawrence V. White* and *Mr. William C. Gotshalk,* for the petitioner-appellant.

*Messrs. Boyle & Archer,* for the defendant-respondent.

The opinion of the court was delivered by

WELLS, J.

This is an action for divorce commenced by the husband-appellant, who in his petition charged desertion upon the part of his wife as of the month of November, 1914.

The wife-respondent answered, denying the desertion charged against her, and alleging that she and the defendant separated on November 18th, 1914, at his request and with his consent; that she had always been willing to live with him as his wife and had requested him to permit her to do so but he had refused to live with her.

The advisory master, who heard the matter, advised a decree dismissing the husband's petition for the reason that there was no corroboration of the desertion charged against the wife, and that no sincere effort was made by the husband to bring about the return of the wife, as required by law.

From such decree the husband appeals.

The questions involved are factual.

The parties were married September 30th, 1914, and separated November 18th, 1914, seven weeks after the marriage.

The only testimony as to the facts and circumstances leading up to the separation comes from the parties to the suit.

He says she left of her own accord. She says he ordered her to leave under threat of bodily harm, and that she loved her husband and begged to remain. They both appeared before an overseer of the poor and arrangements were made for the husband to pay her a weekly sum for support. This he did, with some variations, up until the time he filed his divorce suit, in January, 1933 (over eighteen years after the alleged desertion). After the separation he returned to the boarding house in which he had lived prior to the marriage, and she went to live with her sister, and they have lived within a few city blocks of each other ever since.

In February, 1923, an attorney, representing the wife, wrote the husband a letter, asking him to increase the wife's weekly allowance from $5 to $7.50 per week, otherwise it would be necessary to file a maintenance suit in the court of chancery. This was followed by another letter from the wife's attorney to the husband, dated April 4th, 1923, renewing the request for the increase in her allowance and stating that the matter must be brought to a conclusion.

On April 6th, 1923 (two days after the last letter from the wife's attorney to the husband), the husband wrote the wife a letter in which he referred to the two letters received from her lawyer, and placed all the blame for the separation on the wife, and extolled himself on his generosity in supporting her when she was in the wrong. He stated in the letter that he had told her lawyer that he was ready, willing and anxious that they should live together in a home of their own and that he again in good faith was asking her to return, and suggested that if she was willing to do so he would meet her and talk with her whenever and wherever she desired. He says she never answered this letter and that they never met for this conference.

She says that shortly after the receipt of this letter, she called her husband on the telephone at the police station, where he was employed, and met him by appointment at the Camden ferry; that almost immediately he adopted the same "ugly attitude toward her," and said to her: "So you come out to meet me after the way I used you," and she said, "well, why did you write me that letter?" He said, "for a bluff."

She said that he never mentioned their living together and that from that time to the day of the hearing he never spoke to her, wrote to her or communicated with her in any way.

As to what happened in the period of over eight years intervening between the separation (November 18th, 1914), and the husband's so-called invitation to the wife to return (April 6th, 1923), the testimony is conflicting. He says he met his wife during this period at least four times on the street and invited her to return but that she wouldn't consider it. This she positively denies and insists that never, directly or indirectly, did he suggest that they resume their married life and live together as husband and wife. If he had indicated any desire for her to return she would gladly have done so. She had tried to effect a reconciliation in a number of ways, such as sending him a necktie, which she crocheted for him, and a Christmas card, which he promptly returned. This he did not deny.

He admits that since the letter of April 6th, 1923, he has made no effort whatever to bring about her return, and that during the entire eighteen years or more of their separation, he never gave her a present, never called upon her, never sent her a message, never telephoned her and never wrote her a letter except the letter of April 6th, 1923.

A perusal of this "invitation" to return clearly indicates it was designed to place the husband in a favorable light and the wife in an unfavorable light. It was so worded as to antagonize rather than to encourage a reconciliation.

There was not a phrase of affection in it. It was registered and a copy made by the husband and had all the earmarks of a self-serving document. Neither this written invitation nor the four verbal invitations as testified to by the husband to the wife to return were such as might be reasonably expected to bring about that result.

The burden was upon the petitioner to prove his case and all uncertainties of fact should be resolved against him. *Gordon* v. *Gordon, 88 N. J. Eq. 436; affirmed, 89 N. J. Eq. 535.*

Furthermore, in a suit for divorce by the husband against the wife on the ground of desertion he must show, even

though the original desertion was not justified on the part of the wife, that he sought by proper steps to bring about her return. The burden of proving this effort on his part is upon the petitioner, and doubt as to his efforts is resolved against him. *Goldberg* v. *Goldberg, 101 N. J. Eq. 284.*

As this court said in *Baxter* v. *Baxter, 101 N. J. Eq. 236:* "A wife's desertion of her husband cannot be adjudged obstinate unless it has resisted such efforts on the part of the husband as he ought to have made to bring it to an end, under the circumstances of the case."

Our reading of the evidence satisfies us that the separation was due in large measure to the conduct of the husband; that his wife left him because she thought, perhaps mistakenly, but justifiably, she was not wanted; that there was nothing in her conduct to justify the conclusion that it would be useless to ask her to come back, and that a registered letter written by him more than eight years after the separation, but within two days after the receipt of a letter from her attorney, wherein the husband recited her shortcomings and misdoings and his long sufferings and magnanimity, without a wooing word, was very far from being the course of conduct that would naturally induce her to return.

The advisory master who observed the parties as they testified reached the conclusion that the husband did not want his wife to live with him again, and that on the other hand if at any time during this long period of separation the husband had endeavored in good faith to bring about the return of his wife she would have gladly returned to him.

The testimony fully justified the advisory master's conclusions.

We are of the opinion, therefore, that the advisory master properly held that the wife's desertion, assuming without deciding that it was a desertion, was not obstinate, and that the decree dismissing the petiton should be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ. 15.

*For reversal*—None.