CHARLES GLUSKER, petitioner,

*v.*

ANNA S. GLUSKER, defendant.

[Decided April 3d, 1934.]

*Messrs. Perkins, Drewen & Nugent,* for the petitioner.

*Messrs. Burnett & Trelease,* for the defendant.

STANTON, A. M.

Petitioner seeks a divorce on the ground of desertion which he alleges began in the month of September, 1928, and continued down to the filing of the petition herein, on March 27th, 1933.

Defendant denies the desertion and charges that she was obliged to separate from the petitioner in November, 1916, because of his cruel and inhuman treatment, and that she has continued to live apart from him. Defendant counterclaims for separate maintenance. At the hearing, the answer was amended to fix the date of separation as October, 1915.

The parties were married in New York City on July 5th, 1903, and thereafter lived together in Brooklyn, New York, until October, 1915. Two sons were born of the marriage, David on May 8th, 1904, and Alfred on December 17th, 1911.

The defendant left the petitioner in October, 1915, and took with her the children of the marriage. Thereafter they never lived together.

The petitioner testified that he remained in the home for three years after his wife left; that thereafter he lived with his mother in the State of New York, until November, 1927, when he moved to Jersey City, where he rented an apartment in which he continued to reside down to the hearing. The defendant has always resided in the State of New York.

On December 23d, 1916, petitioner and defendant entered into a written separation agreement which recited that the parties "have mutually agreed to live separate and apart from each other because of certain unhappy differences between them," and provided, *inter alia,* that thereafter the parties should live separate and apart from each other forever; that the husband should pay to the wife the sum of $12 per week for the support of herself and the maintenance and education

of the two children of the marriage; that the wife should have the custody of the two children subject to the husband's right of visitation, and that neither party should interfere in any way with the other. In April, 1919, the defendant brought a suit against the petitioner in the supreme court of the State of New York, to set aside this agreement because its monetary provisions were inadequate and because she had entered into it under duress. On August 4th, 1919, a judgment was entered in that suit wherein it was decreed "that the agreement of separation entered into by and between the plaintiff and defendant on the 23d day of December, 1916, be and the same is hereby set aside."

Following this, the parties had a meeting at the home of petitioner's sister, which was attended by some relatives of the respective parties. There an agreement was made that in the future, petitioner should pay to defendant the sum of $22 per week. Petitioner says now that this allowance was made for the support, maintenance and education of the children of the marriage, whereas defendant testifies that it was for the support of herself and the children. At any rate, it was paid regularly down to October, 1932, at which time petitioner discontinued it because the younger son had recently married.

Petitioner bases his case on a willful desertion by the defendant which commenced in October, 1915, and continued down to the time of the commencement of this suit. It is his contention that the desertion became obstinate in September, 1928, and that ever since the defendant willfully, continuedly and obstinately deserted him. He urges that the separation agreement eliminated the element of obstinacy until September, 1928, and that, although the written agreement was set aside by the New York supreme court, nevertheless all of its terms were continued in effect by the oral agreement, except that with reference to the amount of alimony.

As to the circumstances and occurrences which preceded the separation, the parties relate totally conflicting stories. The husband states that at the time, he was a grade teacher in the public schools in New York City, and to make ends

meet, was obliged to teach evening school and Sunday school; that he and his wife disagreed upon finances; that they had difficulty in meeting the charges upon the house which they owned and in which they lived; that the wife thought she had operatic possibilities and demanded a musical education; that he made provision for such education and in connection therewith went into debt to the extent of $1,000; that in the beginning of 1914, she began a systematic course of nagging; that she neglected the home and the children; that she went out frequently during the day in connection with her musical aspirations; that she became interested in the woman's suffrage movement and was very active outside of the home in connection therewith; that the defendant resented it when he complained that he could not continue to go into debt and that they must live within their means, and that she must spend more time at home, caring for it and the children; that she repeatedly threatened to leave and that she did actually move out in the month of October, 1915, taking some of the furniture to her brother's house. In this the petitioner is not corroborated, except as to the withdrawal.

The defendant, on the other hand, states that she was an industrious and hard working wife, always attentive to her husband, their children and the home; that she was interested in music and that she studied it after their marriage, but at very little expense, paying very moderate fees to one professor and enjoying a free scholarship from a musical institute in Brooklyn; that beginning six months after the marriage, the petitioner frequently urged her to leave him; that he unjustly charged her with adultery, in that he said her younger son was not his; that he was suspicious of her; that he continually quarreled with her and constantly belittled her; that she did on one occasion leave him for a period of several months, and returned on his contrite apology and assurance to treat her properly in the future. Defendant related an incident that occurred a few months before she left her husband that upset her greatly. During the night, a revolver, which was under a pillow in the bed in which she and her husband were sleeping, was discharged, and the bullet entered the pillow on which she was sleeping. She stated

that the discharge of this revolver was not accidental, because petitioner admitted to her, just after it happened, that he was disgusted with everything and was going to end it all. She stated that her health was undermined by the conduct of the petitioner toward her and that the repeated demands of the petitioner that she remove from the house finally caused her to leave in October, 1915. There is no corroboration of the defendant in connection with the foregoing.

Petitioner denied the above allegations. I am satisfied that his regard for, and his treatment of this younger son, Alfred, clearly negatives the idea that he denied the paternity of that child. He denies that he ordered her from their home.

My observation of the parties at the hearing satisfied me that they were both high strung and temperamental. The evidence established that for several years prior to the desertion, there was a clash of personalities, tastes and ambitions, which gave rise to discord and dissension. There was incompatability, but nothing more. I am not at all convinced that petitioner's conduct justified the defendant's withdrawal from the home.

Petitioner states that after his wife left him, he kept the house open three years for her to return; that he saw her repeatedly during the early stages of their separation and endeavored to have her return, and that he had other people use their good offices to that end. The son, Dr. David Glusker, testified that at his father's request he spoke to his mother many times about reconciliation; that prior to the year 1920 he did so on several occasions; that his mother at some of these times said that such a thing was ridiculous, and at other times asked his opinion as to whether it would be wise for her to go back, but he refused to give any opinion. Defendant stated that she refused to go back to her husband because she did not feel that he was truly contrite and was not satisfied that he would behave properly toward her in the future. She justified her position by stating that she returned to him once on his promises of amendment, but that he did not live up to them.

On the foregoing facts, a serious question arises as to whether the petitioner is not barred from relief for the reason

that the defendant willfully, continuedly and obstinately deserted him for a period of two years, during which time neither of the parties was a resident of the State of New Jersey, but in fact both were residents of the State of New York, where desertion was not a ground for divorce. *Koch* v. *Koch, 79 N. J. Eq. 24; 80 Atl. Rep. 113; Buckley* v. *Buckley, 95 N. J. Eq. 783; 124 Atl. Rep. 605; Rockefeller* v. *Rockefeller, 113 N. J. Eq. 274; 166 Atl. Rep. 474.*

However, the petitioner contends that he consented to the desertion, or at least acquiesced in it, as is evidenced by the separation agreement between the parties. He urges also that he did not give up hope, but continued through the years to 1928, trying to win back his wife. But desertion becomes obstinate, not when the injured party concludes that there is no further hope of reconciliation, but rather when the desertion is persisted in against his will. Be that as it may, let us consider the case further on the theory that petitioner bases it.

Petitioner testifies that in September, 1928, he and the defendant went together to Lucerne in the Adirondacks. He was contemplating purchasing some property there for use as a boys' camp. He desired to have his wife look the camp over with him and to have the benefit of her advice. She stated that her reason for going was that she had an interest in the property in Brooklyn which he proposed to exchange for the camp. At any rate, after an overnight trip, they arrived at Lucerne on a Saturday and looked over some sites. Saturday night they stayed at a farm house in Lucerne with a family with whom they were acquainted. Nothing was said about reconciliation on the journey to Lucerne. Petitioner testified that when time came for retiring, it was found that their hosts had set aside but one bedroom for them. When he went into the bedroom, Mrs. Glusker stated that if he did not leave at once, she would scream. Thereupon, he withdrew. The next day, Sunday, their relations were friendly as they started for home on the train. He testified that they discussed things of mutual interest and he began to feel that she was becoming somewhat friendly toward him. He took what he thought a favorable opportunity to discuss the sub-

ject of reconciliation, when the train was in the vicinity of Poughkeepsie. He told her it was about time that things were straightened out and that they patched up their difficulties and lived together. He stated that her response was that she was not fit for him morally. That so upset him that he got up and retired to the smoking car, and the matter was discussed no further.

Petitioner admits that no further effort was made by him after this incident to terminate the separation. Petitioner is corroborated with respect to the date of this trip by his son, Dr. David Glusker, who testified that shortly afterwards his mother told him of the trip to Lucerne and the offer of reconciliation.

Defendant admits that petitioner spoke to her on the return from Lucerne about reconciliation. She denies, however, that she said that she was morally unfit for him. She bases the refusal to return to him at this time, as she did the previous refusals, on the ground that she had returned to him once before, and that she felt that there was no justification for giving him any further chances. Defendant states, moreover, that this trip was made some time prior to 1926, probably in the year 1925. She bases this on the fact that she went to Europe in 1926 and her visit to Lucerne with her husband anteceded that.

Assuming, but not deciding, that the situation down to the fall of 1928 was as petitioner contends, namely, that the defendant was guilty of willful and continued desertion during the years 1915 to 1928, but that such desertion was not obstinate, nevertheless, petitioner cannot succeed in this action.

These parties had lived apart for thirteen years prior to the Lucerne trip. During that time, they saw each other frequently. Their meetings were generally in connection with the care, maintenance and education of their children, in whom they were deeply interested. The parents arranged and jointly paid for the education of the son, David, who attended school until he was twenty-two years of age, at which time he was graduated from the University of Pennsylvania Medical School. They helped to support him there-

after, while he was interned at a Brooklyn hospital for a period of two years, and during the time that he did research work at the University of Rochester. On the occasion of his marriage in the year 1930, they joined in giving him a substantial present. Both parents provided for the other son, who apparently was somewhat of a problem, until his marriage, when he was approximately twenty-one years of age. The parties had a great mutual interest in their sons and they fully discharged their obligations to them. During the entire period of the separation, the children were friendly with both of them.

The defendant, from the time she left her husband, was able to earn money. For some years past, she has been engaged in the insurance brokerage business, and she testified that she had earned up to $3,000 a year.

Where a husband and wife have been living apart for thirteen years, by consent or acquiescence, though the separation began against the wishes of the husband, and where their positions in life have been so radically changed, as in this case, and where one of the parties desires to terminate that state of separation and resume normal cohabitation, the duty is upon that party to establish clearly and convincingly that his intentions and efforts in that regard are honest and sincere. It might be said that the efforts to terminate such a separation should be in proportion to the period of time it has existed. The burden is on him to prove that he made proper efforts to terminate the separation under the circumstances of the case, and doubt as to this is resolved against him. *Goldberg* v. *Goldberg, 101 N. J. Eq. 284; 137 Atl. Rep. 438; Sheeran* v. *Sheeran, 115 N. J. Eq. 75.*

The question naturally arises, did the husband honestly and sincerely desire his wife to return to him, or was he laying the foundation for this divorce suit? It has been said that a man in this situation should woo his wife as he did during the courtship. Consider the effort upon which petitioner relies. He went with his wife on a business trip over a week-end; on the way home, in the parlor car of the train, he proposed reconciliation; and upon her refusal for the reason, as he states, that she was not morally fit, he became emo-

tionally upset and went off to another car, and thereafter never spoke to her about the matter again, and never made any further effort to induce her to return to him.

In passing upon the good faith and sincerity of the petitioner, it is proper to consider his change of residence. At the time of his marriage, he was a public school teacher in New York City, and he continued in such employment down to the time of the hearing. In the meantime, he had risen to the position of vice-principal. While it satisfactorily appears that petitioner took up his residence in Jersey City in the fall of 1927 and continued to reside there down to the time of the hearing, nevertheless he gives no reason for this change of residence. Ordinarily, public servants live in the state where they are employed. When this unusual and unexplained change of residence is considered in connection with the nature, character and length of the separation of the parties and the effort which petitioner made to terminate it in September, 1928, it is fair to conclude that petitioner's effort was not an honest and sincere one; that he did not act in good faith for the purpose of inducing his wife to return to him, but rather with the idea of laying a foundation for this action. Petitioner cannot prevail in his suit.

As regards the counter-claim of the defendant, it is admitted that she left her husband. The burden is upon her to establish that she was justified in so doing. *Taylor* v. *Taylor, 73 N. J. Eq. 745; 70 Atl. Rep. 323.* As stated above, it does not satisfactorily appear that she sustained this burden. Defendant has not established that the petitioner was guilty of extreme cruelty.

A decree dismissing the petition and counter-claim will be advised.