EDWINA YEWELL MUNGER, petitioner-appellant,

*v.*

CLARENCE A. MUNGER and EMMA LYNN, defendants-respondents.

[Argued May 23d, 1941.   Decided September 19th, 1941.]

*Messrs. Boyle & Archer* (*Mr. William T. Boyle,* of counsel), for the appellant.

*Mr. Walter S. Keown,* for the defendant Clarence A. Munger.

*Mr. Clifford A. Baldwin,* for the intervening defendant, Emma Lynn.

The opinion of the court was delivered by

HEHER, J.

The challenged decree dismissed the petition for divorce and granted the defendant husband a divorce on his counter-claim. The petition charged that he was guilty of adultery with the intervener on "different days" of the first four months of the year 1938, and also of desertion "in the month of October, 1926, by his unjustified refusal to cohabit with petitioner," and its continuance for the statutory period. The counter-claim, interposed on June 9th, 1938, pleaded desertion "during the month of October, 1926;" and this was likewise grounded in the wife's asserted refusal of sexual intercourse. An amended counter-claim, filed on January 4th, 1939, averred the occurrence of the desertion in the month of October, 1930. The amendment was made to correct what the counter-claimant termed a "typographical error."

Upon the conclusion of petitioner's case, the petition was dismissed for "insufficient proof." This was in response to the husband's motion directed solely to the count for deser-tion, and the intervener's motion addressed to the count for adultery. While the husband did not join in the latter motion, he entered no objection to that course.

As to the counter-claim, the learned advisory master found that petitioner "separated herself sexually from" her husband "upon her return from France in October, 1930; that her reason therefor was her belief, predicated upon her French

doctor's declaration, that sexual intercourse was the cause of her corpulency; that she then chose to forego and ever since has steadfastly refused to submit to sexual relations with defendant for fear that her reducing treatments might become either ineffective or retrogressive;" that "when cohabitation, in its true sense, in the marriage relation thus ceased, desertion commenced;" and that the desertion was willful, continued and obstinate.

With respect to the element of obstinacy, he perceived no evidence tending to show that the husband "contributed in any degree to the separation;" and he concluded that the wife's married life was one of such "comfort and ease" as to give rise to "a sense of smug security against her friends and defendant's friends obtaining knowledge of her sexual abstinence," and to afford her. "opportunity * * * to carry on her dietary program at the sacrifice of the sexual obligation she owed, as a wife, to defendant and with but slight possibility of the true situation becoming known to outsiders;" that, "possessing this distinct advantage," she "had nothing to lose but much to gain by her selfish determination to masquerade as defendant's wife," and "she thus maneuvered defendant into the condition which now exists and from which she now seeks to prevent his escape;" that "all of this * * * presents substantial reason why continuance of conciliatory overtures by defendant would have been unavailing;" that, in the circumstances, the "burden" of making "conciliatory overtures" was upon the wife rather than the husband;" that, "while the law requires much of an offending husband it does not expect less from.an offending wife;" and, finally, that "when petitioner sexually separated herself from defendant she did so with a fixed determination not to return to him, and that any effort on his part to induce her to resume sexual cohabitation with him would have been unavailing."

Citing *Gordon* v. *Gordon, 89 N. J. Eq. 535,* the master excluded evidence offered by petitioner as to "circumstances and incidents" which occurred more than two years subsequent to the alleged act of desertion, on the ground that, if there was such cause of action for divorce, it had accrued at the expiration of the statutory period and "could not be divested except by" the defendant's "own act."

The appeal is from the whole of the decree.

There is error in matter of law in the foregoing ruling. If, as the master found, petitioner's abstinence from marital intercourse was at the outset induced solely by her belief that it was an essential part of a flesh-reducing regimen prescribed by her physician, desertion did not then "commence" within the intendment of the statute. *R. S. 1937, 2:50-2 et seq.*

In 1930, when petitioner submitted to medical treatment at Vichy, France, she weighed 300 pounds, and was in ill health, attributable in major part to obesity—so much so, she affirmed, that the prognosis was very unfavorable unless immediate expert care was had. She "had an extremely rapid heart—high blood pressure" and "excessive weakness." She journeyed to Vichy for this purpose on the advice of her local physician; and the result, she said, was a reduction in weight of more than 130 pounds and a marked improvement in health. There is no question that she consistently adhered to a severe reducing-diet. Conceding that his wife was not in good health when she made the trip to Vichy, the defendant asseverated that upon her return, and likewise after another journey there in 1931, "her health was in a worse condition than before she left," an "impairment" which in his judgment was due to the "treatments;" and his cross-examination reveals at least great doubt in his own mind as to whether petitioner's "health was such" thereafter "that it was not right for her to submit to sexual intercourse."

If petitioner withdrew from conjugal intercourse for substantial reasons of health alone, the inference of a willful desertion, *i. e.,* an unjustified cessation of cohabitation with intent not to resume the relation, is utterly unsustainable. *Marsh* v. *Marsh, 14 N. J. Eq. 315;* *Sergent* v. *Sergent, 33 N. J. Eq. 204;* reversed on other grounds, *36 N. J. Eq. 644;* *Carroll* v. *Carroll, 68 N. J. Eq. 724;* *Caffrey* v. *Caffrey, 74 N. J. Eq. 834;* *Oertel* v. *Oertel, 83 N. J. Eq. 39;* *Rains* v. *Rains, 127 N. J. Eq. 328.* The wrongful intent is of the essence of the act. It is settled in this state that, to constitute desertion, the abstention from matrimonial intercourse must have been without just cause or excuse. *Langille* v. *Langille, 119 N. J. Eq. 12;* *Haviland* v. *Haviland, 114 N. J. Eq. 96;*

*Haskell* v. *Haskell, 99 N. J. Eq. 399; Parmly* v. *Parmly, 90 N. J. Eq. 490; Rector* v. *Rector, 78 N. J. Eq. 386; Oertel* v. *Oertel, supra; Raymond* v. *Raymond, 79 Atl. Rep. 430.* See, also, *1 Bishop on Marriage and Divorce (5th ed.)* § *782.* The general rule elsewhere is that cessation of connubial cohabitation, even though not warranted by considerations of health, is not such an abnegation of marital duties as to constitute desertion. *17 Am. Jr. 206.* And such was the early view of our statute. *Reid* v. *Reid, 21 N. J. Eq. 331; Watson* v. *Watson, 52 N. J. Eq. 349.*

But petitioner did not plead a justifiable denial of matrimonial intercourse. *E contra*, she maintained that it was her husband who had offended in this regard; and that his failure of conjugal duty had been continuous from the month of October, 1926. He had expressed to her a dislike of "married life," and a determination "not to have any more children." Yet the master found convincing evidence that petitioner, on her physician's advice, had withdrawn from the sexual relation as a weight-reducing measure; and the petitioner herself at one point in her testimony, inadvertently or otherwise, made what seems to have been an admission of her belief that such cohabitation had in some degree contributed to her corpulency, though earlier she testified that she had informed her husband it was her physician's view that the condition was ascribable to "the prostation of natural instinct" incident to his withdrawal from that relation.

It does not matter that the parties were on common ground at the hearing as to non-intercourse subsequent to the month of October, 1930. That does not conclude the issue. Counsel seemingly labors under a misapprehension of the law. It is the settled rule that a divorce will not be granted upon the uncorroborated testimony or admissions of the parties respecting the elements of the matrimonial offense charged. This requirement is embedded in sound public policy. *Stieglitz* v. *Stieglitz, 92 N. J. Eq. 292; McLain* v. *McLain, 91 N. J. Eq. 530; Hague* v. *Hague, 85 N. J. Eq. 537; Parmly* v. *Parmly, supra; Garrett* v. *Garrett, 86 N. J. Eq. 293.*

And the evidence in this behalf is not altogether convincing. Indeed, the course of conduct cited by defendant in

refutation of petitioner's testimony of a complete cessation of matrimonial intercourse from the month of October, 1926, in all seeming continued after October, 1930. Petitioner and the defendant thereafter resided together in the family home, ostensibly bearing each to the other the relation of husband and wife, until defendant's conduct with the intervener, well characterized by the master on the motion to dismiss the adultery count as "honestly" generating in petitioner's mind the belief of "misconduct between" them, led to this suit for divorce, and even at the time of the final hearing they were still occupants of the house. While this in itself is not conclusive of the question of desertion, it is yet to be considered with all the other circumstances in the resolution of the issues of willfulness and obstinacy, involving as they do the parties' state of mind. As was their wont prior to October, 1930, they made several out-of-town pleasure trips together, sometimes becoming the house guests of friends; and on their overnight stays, the defendant admitted, they "usually * * * occupied the same bedroom." With one exception to be hereafter noted, such were "the sleeping arrangements" unless "the house was crowded." And they frequently entertained at home. To all outward appearances, they pursued a normal married life. When apart for a time they corresponded, and nothing which thus passed between them is offered as corroborative of the contentions now made. The defendant conceded they were the guests of friends in Bloxom, Virginia, for the Thanksgiving holiday of 1932, and the following New Year's; and that on each occasion they occupied the one bedroom. It is needless to say that an inference unfavorable to defendant is fairly derivable from this course. Compare *McCabe* v. *McCabe, 129 N. J. Eq. 431; Stieglitz* v. *Stieglitz, supra.* Admittedly, their conduct revealed to their hosts nothing amiss in their relationship. Seemingly, it occurred to neither that cause for divorce for desertion had been given until the defendant's association with the intervener produced a crisis in their affairs. Defendant testified that the counter-claim was filed "on the advice" of his counsel; that he "would never have started a divorce suit * * * unless" his wife "started one against him;" and that after

she instituted this action he "thought that" his "side of the story should be stated, and" he "filed a counter-claim." And the confusion of dates respecting the commencement of the pleaded desertion is not wholly without significance in this regard.

Yet on the prior New Year's day, while on a visit to the home of an intimate friend, Mrs. Florence E. Cramer, a resident of Atlantic City, the defendant, in the presence of his wife, refused the hostess' invitation to share his wife's room (she had arrived the day before). He took another room for the expressed reason that he "liked it quiet" and "liked to sleep late in the morning." The defendant did not take the witness stand to deny the occurrence as thus related. He had earlier testified, at first, that he "did not think" he "stayed overnight;" and then he admitted that he had, adding that he thought he "was assigned to the room * * * usually occupied" by the hostess' chauffeur, and that he did "not know about the room Mrs. Munger had." It would seem that this conduct is not reasonably reconcilable with defendant's present contention of a continuous estrangement for more than a year contrary to his will. He offered no explanation consistent with that state of mind. If such had been the case, he would certainly have embraced the ·opportunity for a rapprochement. On this inquiry, it is pertinent to observe that the defendant conveyed to petitioner, upon her return from one of the trips to France, his wish that a nurse, who had been in their service since the birth of their child, be placed in charge of the household, on the ground that "she managed" it "more economically" than petitioner. There are other circumstances pointing in the same direction. For instance, defendant did not consult the family physician with the view, through his offices, of terminating the asserted sexual separation if compatible with her physical welfare—a natural measure if his attitude was that now professed. But there is no occasion to elaborate.

Apart from the question of a willful desertion such as defendant charges, the evidence satisfies us that, if there was such separation of the parties, it was not against the will of defendant, and so the element of obstinacy is lacking. That

is the more probable hypothesis. The circumstances are plainly revelatory of a state of mind at variance with obstinacy in the legal sense. The defendant was under a duty during the statutory period to take all reasonable measures to put an end to the separation, if such there was; and he failed in the discharge of that obligation. The duty of making overtures was not the wife's alone. Certainly, there was no corroborative evidence of the will essential to obstinacy; and on this ground alone the divorce is not well-founded. *Vide Cusick* v. *Cusick, 129 N. J. Eq. 82; Howes* v. *Howes, 125 N. J. Eq. 272; Laing* v. *Laing, 110 N. J. Eq. 411; Goldberg* v. *Goldberg, 101 N. J. Eq. 284; McLain* v. *McLain, supra.*

The counter-claim should have been dismissed, and the court below is directed so to decree.

These considerations likewise call for the dismissal of the petition. The evidence is not convincing of a willful desertion as charged therein. As stated, what has been said respecting the conduct of the parties subsequent to 1930 is likewise true of the period from October, 1926, to October, 1930. At all events, there is no proof of obstinacy. Nor does the evidence adduced on the charge of adultery meet the legal standard of proof. *Vide Lotz* v. *Lotz, 129 N. J. Eq. 476.*

Appellant also maintains that she suffered substantial injury through the master's exclusion of proffered evidence material to the fundamental issue. None of these rulings has been incorporated in the petition of appeal as a ground for reversal; and they are therefore not subject to examination here. *Supplee* v. *Cohen, 81 N. J. Eq. 500; New Jersey Building Loan and Investment Co.* v. *Lord, 66 N. J. Eq. 344.*

A counsel fee in the sum of $1,000 was allowed to the intervener; and complaint is made that it is "excessive." We have the view that appellant should not be visited with all the expense incurred by intervener in defending the action. After all, the suit was the result of appellant's belief of adulterous relations engendered by the indiscreet conduct of defendant and the intervener. And, since appellant does not challenge the right to an allowance, we are of the view that it should be reduced to $250.

Appellant was awarded a counsel fee of $200; and it is

urged that this is inadequate. We think this criticism is warranted, and that, under all the circumstances, there should be an allowance of $1,250.

The decree is accordingly reversed *pro tanto;* and the cause is remanded with direction to enter a decree in conformity with this opinion.

*For affirmance*—CASE, WELLS, JJ. 2.

*For modification*—THE CHIEF-JUSTICE, PARKER, BODINE, HEHER, PERSKIE, PORTER, COLIE, DEAR, RAFFERTY, HAGUE, THOMPSON, JJ. 11.