### ULLRICH v. ULLRICH.
### 153/215.

Court of Chancery of New Jersey.
Dec. 11, 1947.

Samuel F. Penza, of Newark, for complainant.
Simon M. Seley, of Newark, for defendant.

### TOMASULO, A. M.

Complainant filed her bill for separate maintenance alleging that the defendant, without justifiable cause, abandoned her on March 5, 1945, and that since that time has refused and neglected to maintain and provide for her and their son Richard, age 17.

The defendant filed an answer and counterclaim and by the former, denied the allegations of the bill, and by the counterclaim, sets out a cause of action for divorce on the ground of desertion alleged to have commenced on or about January 1942.

Complainant's position may be concisely stated as follows: That since they were married on June 16, 1921, there was never any real happiness between them because, as she stated, "he always wanted the freedom of a bachelor along with the privileges and comforts of a married man"; that this often resulted in disputes.

Since January 1941 there was a cessation of marital relation. She states: "At first he ignored me. I noticed he wasn't feeling well. His eyes were watery and red-

rimmed. I asked him to see a doctor. His underwear and bed clothes were soiled. I spoke to him and he said he had a boil"; that on one occasion, when she opened the bathroom door in May 1941 she noticed that he was badly infected about his abdomen and privates; that she spoke to him about this and suggested that he see a doctor and his response was that this was unnecessary. Complainant states further that she was worried about his condition because there was evidence of "puss and flecks of blood on his undershirts and lower part of his pajamas"; that she offered to accompany him to a doctor of her own or his choice, which offer was declined; that sometime later, the defendant consulted a physician, whose name he refused to reveal, but that he brought home a box of capsules bearing a label indicating that its contents were to be applied locally.

Complainant testified that in December 1941 she accompanied her husband on a trip to Florida and that before making this trip she requested him to visit a physician for the purpose of having a blood test made, which he likewise declined to do, and that during their stay in Florida the defendant made one sexual advance to her to which she did not submit because of his failure to go to a doctor as she requested; that thereafter, he never made any sexual approach to her except for two occasions, one, "when the alarm went off and I got up to fix my son's breakfast—he was going to work, and another time I was physically unable to be obliging." Both of these occasions were in December 1944.

During the winters of 1941 and up to March 1947, the defendant made solo trips to Florida. Complainant placed in evidence, two letters, exhibits C-2 and C-3 which she found among the defendant's effects. C-2 was a letter addressed to Mr. and Mrs. Joseph Ullrich, Merritt Island, Box 31, Florida, c/o Stuart Beltz. It is apparent that the complainant was not in Florida when the letter was mailed to the defendant. Exhibit C-3 is a letter addressed to Miss Gladys Corbitt, Box 31, Merritt Island, Florida, c/o Stuart Beltz. Both exhibits are postmarked February 18, 1947. It appears that both

of these letters were re-directed to 125 Weequahic Avenue, Newark, N. J., having been undelivered to the Florida address. An examination of the letter and envelope suggests the inference in which the complainant attempted to convey that the defendant had been living with Gladys Corbitt either in Florida or at 125 Weequahic Avenue, Newark, N. J., or both.

On cross examination, the complainant stated that she would be glad to engage in sexual relations with her husband had he received "a clean bill of health." She further testified she would have been willing to submit to sexual intercourse but not at the risk of her health.

In his version of the testimony, the defendant stated that he had several discussions with his wife respecting his physical condition, which he said was "an acid condition whereby I had a little scaly red flesh which was not injurious or contagious. It was simply an acid condition that soiled the clothes a bit, other than that it was nothing. I never had any venereal disease." To this extent the objective symptoms and physical condition of the defendant as testified to by the complainant, is corroborated.

Dr. York, a witness produced on behalf of the defendant, testified that he diagnosed the defendant's ailment as being a "fungus condition of the groin and scrotum and severe anxiety" and upon cross examination said, "it's like athlete's foot and while not particularly contagious I think you can get it through contact." Thus, Dr. York's testimony as to the contagiousness of the defendant's condition is in conflict with and refutes the defendant's statement that his condition was not contagious.

Dr. Olcott, a rebuttal witness for complainant, in response to hypothetical questions based upon the testimony in the record, concludes that sexual contact between the parties would be "extremely dangerous" and that a person in the defendant's position should not only be cautioned but ordered to avoid "that sort of thing." Dr. Olcott stated further that the defendant's

condition was very easily communicated by sexual contact and that the likelihood of infection was more dangerous in a woman than in a man.

In the remainder of his testimony and on cross examination, defendant denies that the complainant ever mentioned this physical condition and in effect states that it was not even the subject of any conversation between them. His answers to questions propounded to him are punctuated by weak denials and general evasiveness. The record is barren as to any specific overtures having been made by him to his wife. His direct testimony is that from time to time he asked her to resume living with him. The defendant does not deny complainant's testimony respecting his sexual advances to her in December 1944 and in fact, no mention of it is made in his testimony.

Aside from the foregoing, the bulk of the defendant's testimony bears upon his wife's alleged lack of understanding of his work and her failure to co-operate with him socially so as to enhance his position with his firm. In addition to this, the defendant's counterclaim, even if true, lacks corroboration in every essential detail.

On the other hand, complainant's position finds support in the testimony of her son, who on cross examination, branded the defendant as being "wrong" and charged his father with having solicited his testimony in a contemplated divorce action as far back as March 1945 because "he had another woman he wanted to marry at that time."

There is no doubt but that the unjustified refusal of sexual intercourse, persisted in wilfully, obstinately and continuously for a period of two years, constitutes a ground for divorce for the cause of desertion. Parmly v. Parmly, 90 N.J.Eq. 490, 106 A. 456; Rector v. Rector, 78 N.J.Eq. 386, 79 A. 295; Raymond v. Raymond, N.J.Ch., 79 A. 430; Haskell v. Haskell, 99 N.J.Eq. 399, 131 A. 876.

Conversely, if a spouse withdraws from conjugal intercourse for substantial reasons of health alone, the

inferences of a wilful desertion, i. e., an unjustified cessation of cohabitation with intent not to resume relations is utterly unsustainable. Munger v. Munger, 130 N.J.Eq. 279, at page 282, 21 A.2d 784 and the cases cited therein.

The question therefore, which arises, is, under what circumstances will a spouse be excused? It is conceivable that any number of situations may be conjured up and therefore no attempt will be made to explore this field. The court's inquiry is, of course, necessarily confined to the case at hand. Neither counsel has referred to the court any precedent in this state which is squarely on point. In arriving at a determination, therefore, I have pursued the trend and the reasoning of our courts in previously adjudicated cases. Thus, we find that where a spouse knowingly communicates a venereal disease to the other without the other's knowledge or consent, it is extreme cruelty. Cook v. Cook, 32 N.J.Eq. 475. Such act will also justify the aggrieved spouse in leaving the home without being guilty of desertion. Crane v. Crane, N.J.Ch., 45 A. 270. Both of the foregoing cited cases deal with situations in which the disease was actually communicated. The case of Lazarwitz v. Lazarwitz, 102 N.J.Eq. 132, 139 A. 881 goes a step further and holds that the attempt of the husband, who to his own knowledge was suffering from syphillis, to force his wife to have sexual intercourse with him against her will, constitutes extreme cruelty. An analysis of these cases reveals that the underlying factor in the mind of the court is its desire to safeguard the health and welfare of the innocent spouse. The cited cases are situations in which the afflicted spouse had a venereal disease.

In the case at bar, the defendant was suffering from a visible skin affliction of the abdomen and privates, contagious in character; puss and blood flecks were its by-products and his underwear, night clothes and bed linens evidenced this. The complainant was aware of the defendant's condition and had, in my judgment, ample reason to fear for her own physical well being in the event that she submitted to sexual contact. I do not

believe that the mere fact that the defendant was not afflicted with a venereal disease as in the cases cited supra, alters the basic law and the reasoning underlying the same as I have indicated supra. I have therefore concluded that where, as here, a husband is suffering from an ailment which engenders in the mind of his wife a reasonable and well grounded fear that to engage in the sexual act with her husband would jeopardize her health and physical well-being, that the wife is excused from performing the marital act. Under such circumstances, it is incumbent upon the ailing husband to furnish reasonable assurance to his wife that he is either cured or that she is not endangering her health by having sexual relations with him.

In the case at bar, the defendant husband insisted upon what he conceived to be his legal right and refused to even assure himself, let alone his wife, that his condition was not a communicable one and that they could safely engage in the act. Complainant testified that her refusal to submit to intercourse was not unconditional. She exhibited a willingness to do so but exhorted him to submit himself to a doctor of his or her choosing in order to assure her as well as him that it was safe to do so. This was her only condition. His refusal, as I have indicated, in my judgment, excused her from complying with his demands.

And if this were not enough, to deny the defendant relief on his counterclaim, there is still another basis for doing so. Assuming that the complainant was the deserter, which is contrary to the determination herein made, the defendant, under the law, became duty bound and obligated to make the necessary overtures to bring about the cessation of the alleged desertion on the part of the complainant. Glusker v. Glusker, 176 A. 567, 13 N.J.Misc. 105; Goldberg v. Goldberg, 101 N.J.Eq. 284, 137 A. 438; Holst v. Holst, 101 N.J.Eq. 682, at page 691, 139 A. 333. And as to the proof in this regard, the burden of proving that the defendant made these overtures sincerely, falls upon his shoulders. Popovics v. Popovics, 98 N.J.Eq. 350, 129 A. 126; Goldberg v. Gold-

berg, 101 N.J.Eq. 284, 137 A. 438; Sheeran v. Sheeran, 115 N.J.Eq. 75, 169 A. 871; Holst v. Holst, 101 N.J.Eq. 682, 139 A. 333; Henderson v. Henderson, 134 N.J.Eq. 363, 35 A.2d 686; Baxter v. Baxter, 101 N.J.Eq. 236, 136 A. 191; Hall v. Hall, 60 N.J.Eq. 469, 46 A. 866; Gordon v. Gordon, 89 N.J.Eq. 535, 105 A. 242. In this, the defendant has failed.

After a consideration of the testimony in its entirety, I am unconvinced that the defendant has made the requisite overtures in a bona fide and sincere manner. In fact, I am satisfied that the contrary is true, because notwithstanding that complainant and defendant lived in the same house together from the date of the alleged desertion in 1942 to the date of trial, the defendant made only two attempts at sexual relations with his wife both in December 1944. These attempts were both made, at which I believe and have determined, were inopportune times. This, together with the fact that the defendant was apparently interested in remarriage in 1945 as testified to by his son and his general conduct, demeanor and attitude during the hearing has satisfied me beyond any doubt that he has not only failed to make the requisite overtures required of him, but that any overtures alleged to have been made by him and those to which complainant testified in December 1944 were not made in a bona fide honest and sincere manner

I therefore have determined to advise a decree in favor of the complainant and to dismiss the counterclaim of the defendant.